O'VERTON, J.
 

 This is an appeal from a judgment sustaining an exception of no cause of action. The essential facts appearing from the petition are that plaintiff owned, as her separate property, thirty-one shares of stock in the Guaranty Bank & Trust Company; that plain-tiff’s husband was indebted to the Bank of Couslmtta; that the bank was insisting upon a partial payment, -or upon security for the debt, that plaintiff’s husband entreated her repeatedly to permit him to have the stock temporarily for the purpose of securing the debt; that she finally -let him have the stock temporarily, but refrained from indorsing it, and did not authorize any one else to indorse it, or to sell it; that the then president of the Bank of Coushatta induced her husband to si-gn her name as indorser of the stock, which her husband did’; that the bank immediately sold the stock to T. P. Wheadon, of Alexandria, La., and credited the proceeds on the husband’s debt; that the Guaranty Bank & Trust Company then issued to Wheadon a certificate of shares fo.r the shares purchased by him ; that it was not until January 2,1926, that plaintiff learned of the transaction; and that the Guaranty Bank & Trust Companjr, being the custodian of its stock books and the trustee of the stockholders, is indebted to plaintiff, in the absence of its ability to reissue other stock to plaintiff, for the value of the stock and the dividends declared thereon.
 

 As there is not even an intimation that Wheadon or the Guaranty Bank & Trust Company acted in bad faith in the transaction, the presumption is that they acted in good faith, and must be regarded as having so acted.
 

 
 *874
 
 The primary question presented by the exception of no cause of action is whether the Guaranty Bank & Trust Company, the defendant herein, was justified, under the allegations of the petition, in recognizing Wheadon as the owner of the stock, and in issuing new stock to him in lieu of that which he claims to have acquired from the Bank of Coushatta.
 

 Section 1 of the Uniform Stock Transfer Law, or Act No. 180 of 1010, page 266, provides that: “Title to a certificate and to the shares represented thereby can be transferred only
 

 “(a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or
 

 “‘(b) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of- attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person.
 

 “The provisions of this section shall be applicable although the charter or articles of incorporation or code of regulations or bylaws of the corporation issuing the certificate and the certificate itself, provide that the shares represented thereby shall be transferrable only on the books of the corporation or shall be registered by a registrar or transferred by a transfer agent.”
 

 Section 2 provides that “nothing in this Act shall be construed as enlarging the powers of an infant or other person lacking full legal capacity, or of a trustee, executor or administrator, or other fiduciary, to make a valid indorsement, assignment or power of attorney.”
 

 Section 5 provides that “the delivery of a certificate to transfer title in accordance with the provisions of Section 1, is effectual, except as provided in Section 7, though made by one having no right of possession and having no authority from the owner of the certificate or from the person purporting to transfer the title.”
 

 Section 7, referred to in the preceding section, provides with reference to rescission of transfers, that, “if the indorsement or delivery of a certificate,
 

 “(a) Was procured by fraud or duress, or
 

 “(b) Was made under such mistake as to make the indorsement or delivery inequitable; or if the delivery of a certificate was made
 

 “(c) Without authority from the owner, or
 

 “(d) After the owner’s death or legal incapacity, the possession of the certificate may be reclaimed and the transfer thereof rescinded, unless:
 

 “(1) The certificate has been transferred to a purchaser for value in good faith without notice of any facts making the transfer wrongful, or,
 

 “(2) The injured person has elected to waive the injury, or has been guilty of laches in endeavoring to enforce his rights. * * * ”
 

 Section 9 provides that “the delivery of a certificate by the person appearing by the certificate to be the owner thereof without the indorsement requisite for the transfer of the certificate and the shares represented thereby, but with intent to transfer such certificate or shares shall impose an obligation, in the absence of an agreement to the contrary, upon the person so delivering, 'to complete the transfer by making the necessary indorsement. The transfer shall take effect as of the time when the indorsement is actually made.
 

 
 *876
 
 “This obligation may be. specifically enforced.”
 

 •Erom the foregoing it would seem that section 1 of the Act makes two things necessary to transfer stock — one, the indorsement of the certificate, or the assignment thereof in a separate instrument, or a power of attorney, signed by the person appearing by the certificate to b^ the owner of it, and the other is the delivery of the certificate, or, where such is the means of transfer adopted, the delivery of the certificate, together with the assignment or the power of attorney authorizing the transfer.
 

 Section 1 is qualified by section 5 of the Act to the extent that the delivery may be made by one having no right of possession, or authority from the owner of the certificate, or from the person purporting to transfer title, but this presupposes, we think, that the certificate has been indorsed by the one appearing from it to be the owner, or that it has been assigned in writing by such person, or that the power of attorney has been executed by him, as provided in' section 1 of the Act.
 

 Section 5 of the Act in no manner modifies section 1, as
 
 to
 
 the necessity for the indorsement by the one appearing from the certificate to be the owner, or as to the necessity for the assignment or execution of the power of attorney by such person. This is made clear by-a later section, section 9 of the Act, where the indorsement is referred to as requisite, and also by the clause therein providing •that “the transfer shall take effect as of the time when the indorsement is actually made.”
 

 The only instance in which delivery, without the indorsement of the one appearing from the certificate to be the owner, as appears from section 9 of the act, has some effect, is where- the- owner, not an unauthorized person, delivers the certificate with intent to transfer it, but fails to indorse it. In that instance the delivery by the owner creates an obligation to indorse, which inay be specifically enforced.
 

 There is nothing in section 7 of the Act that gives effect to the transfer of a certificate, where the indorsement was made by a person having no written authority from the owner to make it, and, in fact, no authority whatever to indorse it, even though the certificate finds its way into the hands of a purchaser who does not suspect the existence of the defect, and is a purchaser in good faith. That section, that is section 7, names certain defects, which give grounds for rescission, un-, •less the certificate has been transferred to a person purchasing for value in good faith. Among these grounds is not the unauthorized indorsement of the certificate. In fact, nowhere in the statute is effect given to a transfer, based upon such an indorsement. To give effect to it would be contrary to the express provision of section 1 of the Act, requiring that the indorsement be by the person appearing from the certificate to be the owner.
 

 There .is nothing in Act No. 215 of 1912, p. 488, that justifies the conclusion that an unauthorized indorsement of a certificate is entitled to any effect whatever, and such a law could hardly be passed without endangering the holders of stock and rendering it less valuable as an article of commerce, especially in view of the fact that an unauthorized delivery suffices so far as delivery is concerned.
 

 When the act of 1912 refers to indorsement of stock in blank or in full it means indorsement by -the owner, appearing as such from, the certificate, and when the act provides for the protection of persons purchasing stock, or for the protection of transfer agents in transferring it, against any undisclosed or latent ownership or interest in the certificate,
 
 *878
 
 claimed by others, the act does not refer to ownership, claimed by virtue of an unauthorized indorsement. Such an indorsement does not convert the ownership of the person, appearing from the certificate to be the owner, into an undisclosed ownership. The1 purchaser or transfer agent' must ascertain, before purchasing or transferring the stock, into the genuineness of the indorsement or existence of authority to make the indorsement.
 

 The petition herein fairly negatives the idea that the stock was delivered by plaintiff to her husband with the intent, whether legal or illegal, to transfer title to him, for it distinctly alleges that she delivered the certificate temporarily to him. In fact, the conclusion, though not an expressed one, authorized by the petition, is that she delivered the stock temporarily for the purpose of enabling her husband to secure his indebtedness to the Bank of Goushatta, which induced him to sign her name as indorser on it.
 

 It might be that under the provisions of section 9 of the Uniform Stock Transfer Law (Act No. ISO of 1910, p. 265), such a delivery created an obligation to indorse the stock certificate, which could have been specifically enforced by one of the parties in interest, and therefore, due to that obligation, plaintiff could not recover, were it not for the fact that the delivery was made, and in fact each of the transfers was completed and the stock reissued, prior to January 2, 1926, when it appears that plaintiff learned of the transfers and reissuance. This was during a period when the wife was expressly prohibited by law from binding herself for the debts of her husband or mortgaging or pledging her separate property to secure the same. Act No. 219 of 1920. Therefore had specific performance been attempted it could not have succeeded.
 

 The change of the law, in that respect, in 1926, by the passage of Act No. 132 of that year, authorizing married women to bind themselves for the debts of their husbands and to mortgage and pledge their separate property to secure the same, does not aet retrospectively and make valid a null and void transaction. The transaction being null from the beginning remains null.
 

 Our conclusion is that Wheadon did not acquire a valid title to the certificate.
 

 As Wheadon acquired no such title, defendant had no right to reissue plaintiff’s stock. It was defendant’s duty to ascertain the genuineness of what purported to be plaintiff’s indorsement on the certificate, or to ascertain whether the indorsement was properly authorized. Having failed to do so, to the injury of plaintiff, defendant, on the face of the petition, is liable to her for the damages suffered. We do not cite Leurey v. Bank of Baton Rouge, 131 La. 30, 58 So. 1022, Ann. Cas. 1913E, 1168, in support of this ruling, because since the facts occurred out of which that case arose, the law governing the transfer of stock has been changed by the Uniform Stock Transfer Law (Act No. 180 of 1910), especially by section 1 thereof, and affected by the act of 1912, among other things, as to undisclosed ownership, but rest the ruling on the principle that before reissuing the stock defendant' should have ascertained the genuineness of what purports to be plaintiff’s indorsement, or whether it was a duly authorized indorsement. See vol. 4, Thompson Corporations (3d Ed.) §§ 4445, 4446, 4448.
 

 Eor these reasons the judgment appealed from is set aside, the exception of no cause or right of action is overruled, and this case is remanded to be disposed of according to law.
 

 
 *880
 
 O’NIELL, O. J1., is of the opinion that, the the Bank of Coushatta is primarily responsible in this ease, but concurs in the decree on the authority of Thompson on Corporations (3d Ed.) vol. 6, § 4468, p. 320.
 

 ROGERS and THOMPSON, JJ„ dissent, being of the opinion that the case is governed by Act No. 215 of 1912, and that the defendant bank is protected undel- the terms of that statute. See, also, Chase v. Hibernia Bank, 44 La. Ann. 69, 10 So. 379.