## ESCAT v. LEAMAN.

### No. 16890.

Court of Appeal of Louisiana. Orleans.

May 30, 1938.

Alex W. Swords, of New Orleans, for appellant.

A. Deutsche O'Neal, of Houma, and A. Dallam O'Brien, Jr., and John Pat Little, both of New Orleans, for appellee.

McCALEB, Judge.

This is a suit by Mrs. Mathilda Busha, widow of Bernard C. Leehans by first marriage, and now wife of Alfred E. Escat, individually and on behalf of her two minor children, issue of her first marriage, and also as administratrix of the estate of her first husband, against Paul J. Leaman, in which she requests the court to compel him to deliver to her a certain stock certificate (now in his possession) for 7 shares of full paid stock of the Union Homestead Association, standing in the name of her deceased husband.

The defendant resists the demand on the ground that he, having acquired the certificate for value and in good faith, is entitled to the ownership of the stock represented thereby.

In the District Court, there was judgment in favor of the plaintiff recognizing the estate of her deceased husband as the owner of the shares of stock in controversy and ordering the defendant to deliver the certificate to her in her capacity as administratrix. Defendant has appealed from the adverse decision.

The facts of the case are, for the most part, not in dispute and we find them to be as follows:

During the year 1929, B. C. Leehans died in the State of Texas and his succession was opened in the county court of El Paso. At his death, he left a widow in community, the plaintiff herein, and two minor children, his soles survivors and legal heirs. He was the owner of 30 shares of full paid stock in the Union Homestead Association of the City of New Orleans, all of which, under the law of Texas, was community property. These 30 shares of stock were represented by four certificates issued in his name, to-wit: No. 5508 for 10 shares, No. 5961 for 5 shares, No. 5579 for 8 shares and No. 5896 (the one in controversy) for 7 shares.

Shortly after Leehans' succession was opened and under date of September 4, 1929, the plaintiff was confirmed as administratrix of his estate. Sometime afterwards, she came to New Orleans and married Alfred E. Escat.

On April 20, 1932, she entered into an agreement with one F. B. Hill, a realtor doing business at that time in New Orleans under the name of F. B. Hill Company, whereby she offered to purchase from him certain unimproved real estate situated in New Orleans. Plaintiff says that the agreement to purchase was verbal, whereas one of the defendant's witnesses states that it was a written contract. Inasmuch as it was not offered in evidence, if in writing, we have no means of determining its terms and conditions. At any rate, at the time this agreement was made, the plaintiff deposited with the said Hill stock certificate No. 5896 of the Union Homestead for 7 shares standing in the name of her deceased husband and she annexed thereto a blank power of attorney to transfer the same, which power of attorney is signed "Mathilda Leehans". She also signed, on the reverse side of the certificate, the endorsement "Mathilda Leehans, Administratrix."

As soon as Hill obtained possession of the stock certificate in the manner above described, he took it to the Union Homestead and requested that company to make a transfer of the stock to him. The homestead refused to do so inasmuch as the certificate was issued in the name of plaintiff's deceased husband and was not endorsed by him and it referred Hill and the plaintiff to its attorney, Mr. Azzo J. Plough of New Orleans. Accordingly, plaintiff and a Mr. Voda, an employee of Hill, repaired to the office of Mr. Plough and were advised by the latter that the transfer could not be made until an order was issued by the court in Texas, having jurisdiction of the succession of plaintiff's deceased husband, authorizing plaintiff, as administratrix, to sell the stock. At the request of the plaintiff, Mr. Plough thereupon wrote to the attorneys in Texas representing the estate of her deceased husband, explaining to them the requirements of the homestead in the premises. These attorneys in Texas did not obtain the necessary order of court to effect the transfer and nothing further was done on this score.

In the meantime, however, and within a very short period from the date on which plaintiff deposited the 7 shares of stock in controversy with Hill, the latter sold the same to Leaman & Clesi, stock brokers doing business in New Orleans, for $300.00 (its market value at that time). The firm of Leaman & Clesi was subsequently dissolved and Leaman, the defendant, obtained possession of the stock. At the time Hill transferred the stock certificate to Leaman & Clesi, the latter noticed the absence of a valid endorsement of the same by B.

C. Leehans, plaintiff's deceased husband, who appeared on the face of the certificate as being the owner of the stock. Hill, acting through his agent Voda, explained to Leaman & Clesi that Mr. Leehans had died; that his estate was under administration and that the necessary order of court, authorizing the sale of the stock, had been applied for and would be placed in their hands as soon as it was obtained. Upon this representation by Hill, Leaman & Clesi consummated the deal.

The plaintiff, soon after depositing the stock with Hill, requested that he return the same to her for the reason that her husband, Mr. Escat, did not approve of the proposed purchase of the real estate. She says that Hill promised to return the stock but that he failed to do so. He did not inform her that he had already sold the certificate to Leaman & Clesi and, within a short time after the date of that transfer, he absconded to parts unknown. Plaintiff then, for the first time, found out about the sale of the stock certificate to Leaman & Clesi and she immediately contacted that firm and endeavored to induce them to return it to her which they refused to do.

After several years of unsuccessful negotiations between plaintiff and Leaman looking to a settlement of the matter, plaintiff obtained, on October 8, 1935, a judgment of the Court in Texas authorizing her to sell the stock and decreeing that the 30 shares were community property and recognized plaintiff as being entitled to 15 of these shares and her children as owners of the other 15 shares. Subsequently, she instituted the present suit for the possession of this certificate.

The plaintiff claims that, by virtue of the Uniform Stock Transfer Act (No. 180 of 1910), Leaman has not obtained a legal title to the stock certificate because he bought it with knowledge of the invalidity of the endorsement; that, hence, he has acquired no greater rights than Hill, his transferor, who obviously, in view of his default, was without legal ownership to the certificate and that, accordingly, the defendant should be compelled to return it to her in her capacity as administratrix of her deceased husband's estate, the owner of the stock.

It is perfectly clear that the plaintiff's endorsement of the certificate and the power of attorney executed by her, at the time it was delivered to Hill, was in-sufficient to vest in him a valid title. Under the law of Texas, the sale of succession assets by an administrator, without the authority of the court having jurisdiction of the res, is null. And, under Act No. 67 of 1922, corporations domiciled in this state may not (except at their peril) transfer title to stock belonging to deceased persons on their books unless the party, desiring a transfer, presents to such corporation a duly certified copy of the judgment of the court having jurisdiction of the estate exhibiting that he has been recognized as the owner of the shares.

That plaintiff's endorsement of the certificate and the power of attorney executed by her was without legal effect is plainly revealed not only by the Uniform Stock Transfer Act but by the Supreme Court's interpretation of the provisions of that statute in Coats v. Guaranty Bank & Trust Co., 170 La. 871, 129 So. 513. There it was held that the endorsement by the person appearing as owner on the face of the certificate is essential in all cases to effect a valid transfer.

Thus, in finding that Hill did not obtain a title to the certificate from the plaintiff because of the defective endorsement, it is readily seen that the defendant, as his transferee, did not acquire a better title than Hill inasmuch as he bought the stock with full knowledge of the vices appearing on the certificate.

In fact, defendant's counsel concedes that his client has never obtained a legal title to the stock certificate but he tells us that it would be inequitable to permit plaintiff to prevail in view of the circumstances surrounding the transfer. First, he postulates that, at the time plaintiff deposited the stock certificate with Hill, she, under the Texas law, was the owner of an undivided half of the stock, it being community property; that, as such, she intended to effect a transfer of the stock to Hill; that defendant was the innocent victim and that, therefore, plaintiff should, in good conscience, be made to bear the loss resulting from Hill's default. In short, reliance is placed upon the equitable doctrine that, where one of two innocent persons must suffer because of the fraud of another, the one who makes it possible must bear the consequences. But that principle is not applicable to the facts of the instant case. Counsel is wrong in assuming that the act of plaintiff, in placing this stock in Hill's possession, was the cause of the de-

fendant's injury. On the contrary, the defendant knew, at the time his firm purchased the stock, that, on the face of the certificate, Hill did not have a merchantable title thereto. He, instead of contacting the plaintiff and ascertaining the true state of facts, preferred to rely upon Hill's representation that the necessary · papers essential to the validity of the title would be furnished. He was a business man (stock broker) well versed in the legality of this type of transaction. He cannot plead innocence when he had knowledge.

The next contention of the defendant is that the Uniform Stock Transfer Act does not purport to provide an exclusive mode by which the ownership to corporate stock may be transferred from one person to another. He cites Section 10 of the statute and the case of State v. Schofield, 136 La. 702, 67 So. 557, in support of the proposition. We readily recognize that stock can be transferred either by written contract or under a verbal promise and that, if the transferor should fail to carry out such an agreement, he is liable to his transferee for the damages the latter sustained by the breach. In a proper case (under Section 9 of the Act) the promissor may even be required to specifically perform his engagement. But we are unable to discern that, because the provisions of the statute are not exclusive, the defendant here should be in a more favorable position than his transferor, Hill. Whatever rights the defendant has to the certificate cannot, under the law of contracts, be any greater than those possessed by Hill and as Hill admittedly defaulted upon the agreement he had with plaintiff, she was undoubtedly entitled to cancel her engagement with him and to have the stock certificate returned to her.

The defendant also argues that, under Section 10 of the statute, an attempt to sell and transfer stock creates an obligation which may be specifically enforced. Conceding the soundness of this proposition, it is again apparent that the defendant cannot prevail because he can only enforce whatever claim against the plaintiff as was possessed by - his transferor. Since Hill, the wrongdoer, had none, the defendant did not acquire any from him.

Finally, the defendant urges that plaintiff should not be permitted to succeed in this suit because she has practiced a fraud upon the court of Texas. It is said that, in 1935, when plaintiff obtained the judgment authorizing her to sell the certificate in controversy, she designedly refrained from disclosing to the judge that she had transferred the stock and that she also had her children recognized as owners of the certificate when good faith should have prompted her to have it allocated to herself.

The contention is without merit. It is to be observed that there is nothing in the record to show that the plaintiff intentionally withheld any information from the court. The only document of the Texas court appearing in the transcript is the judgment authorizing plaintiff to sell the shares and allocating them to her children. Hence, it may be that the petition filed by her attorneys in Texas, upon which the judgment is founded, set forth that the ownership of this particular certificate was in contest. But even if it did not, we would not be warranted in finding that the plaintiff was guilty of fraud for failing to disclose such information for, after all, the court's knowledge of the disputed ownership of the certificate would have had little bearing, if any, upon the judgment rendered by it. The most that can be said is that, if the Texas court had gained this information, it might have allocated the certificate in contest to the plaintiff. instead of giving. it to her children and, even if it had thus decreed, our decision would not be altered. Furthermore, we have been unable to discover that the defendant has been in any way prejudiced even though it be assumed that plaintiff knowingly withheld the facts of this controversy from the Texas court. She is not attempting to claim that the judgment she obtained gave her any greater rights than those which the law had already conferred upon her. As a matter of fact, she had the legal authority to maintain this action as administratrix of her deceased husband's estate and the judgment of the court allocating this certificate to her children and giving her the right to sell it added nothing to the power already vested in her.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.