JANVIER, Judge.
This suit was originally brought by 'Nicholas S. Thomas against Southdown Sugars, Inc., in an effort to compel the said corporation to transfer to him the shares of stock (originally 734) represented by Certificate Number 2211 of Realty Operators, Inc., of which Southdown Sugars, Inc., is the successor and which had been issued to (Mrs.) Jean M. Fulton and which certificate was in the possession of the said Thomas and was alleged to be owned by him.
During the progress of the proceeding Thomas died and J. Barnwell Phelps, as Administrator of his succession, has been substituted as party plaintiff.
There was judgment in favor of plaintiff •ordering the defendant corporation to transfer the stock to the Administrator of the Succession of Thomas and the corporation appealed to the Supreme Court. The Supreme Court transferred the matter to us, finding that in the record, as it appeared when the appeal was lodged, there was nothing to show that the value of the stock sought to be transferred exceeded $2,000.00. Thomas v. Southdown Sugars, Inc., 231 La. 75, 90 So.2d 682.
Because the certificate in question stands in the name of Jean M. Fulton, an absentee who has died, a curator ad hoc, Lucien J. Fourcade, was appointed to represent her heirs.
Southdown Sugars, Inc., which is the present name of the corporation originally known as Realty Operators, Inc., takes the position that it is perfectly willing to transfer the stock to the proper owner of the said certificate but that it cannot make the transfer to Thomas or to the Administrator of his succession because the certificate which stands in the name of Jean M. Fulton is not endorsed and there is presented with it no power of attorney authorizing the transfer to the holder of the certificate.
Most of the facts are not in dispute. On May 6th, 1930, Realty Operators, Inc., issued the certificate in question to Jean M. Fulton. On December 22, 1933, Jean M. Fulton, for income tax reasons and acting on advice of her attorneys, sold the said certificate with other securities at public auction. The auctioneer was Adrian H. Muller & Son and the price paid for this certificate and other securities was $1.00.
Later a blank proxy was sent to Mrs. Fulton by Realty Operators, Inc., and she, was asked to sign this proxy so that her stock might be voted at a stockholders meeting. She returned the said proxy with a letter in which she stated that she no longer owned the said stock having sold “the 734 shares * * * at public auction through Adrian H. Muller & Son * * * The attorneys who advised Mrs. Fulton to make the sale were Milbank, Tweed, Hope & Hadley of 15 Broad Street, New York City, and a member of that firm, in answer to interrogatories stated that from the records of that firm when the certificate representing the 734 shares of stock was sent to the auctioneer for sale “said certificate was accompanied by stock power with the signature of Mrs. Fulton guaranteed.” What is meant by “stock power” is a blank power of attorney authorizing the transfer of the stock to the person who might purchase it.
*723 The record of the auctioneer showed that the sale was made to S. Gottlieb of Mansfield Hall Hotel, 226 West 50th Street, New York City, and in answer to an inquiry as to whether the records of the auctioneer indicated that there was attached to the certificate a power of attorney authorizing its transfer, the auctioneer advised that their records did “not indicate that a stock power of attorney was attached to the certificate.” We do not interpret this to be an affirmative statement that there was no such power of attorney attached but merely that the records of the auctioneer did not indicate one way or the other whether there was or was not such a power of attorney with the certificate.
Thomas himself testified that S. Gottlieb was his agent and had purchased the stock for him, and that he, Thomas, had himself paid $1.00 which was the purchase price of this certificate and the other securities. When asked whether there was originally attached to the certificate which he received and which has been in his possession ever since a power of attorney to transfer the stock, he first answered “yes” but then added : “My recollection is not clear on the matter,” and when asked: “What became of the said stock power of attorney?” he answered: “The said stock power of attorney has been detached and I cannot locate the same.” On cross-examination he was asked: “Do you distinctly remember the stock power of attorney endorsed in blank by Jean M. Fulton?” and he answered: “No, I have no distinct recollection, but I understand that the files of Milbank, Tweed, & Hadley indicate that a power of attorney was attached.”
As already stated, the defendant corporation takes the position that it is perfectly willing to transfer the stock to the proper owner, but that it cannot do so because there is no power of attorney authorizing the transfer and because there is evidence in the record to the effect that the actual purchaser of the certificate at the auctioneer’s sale on December 22, 1933, was S. Gottlieb and that there is nothing except the testimony of Thomas himself to indicate that Gottlieb acted as his agent in purchasing the stock.
The defendant corporation makes two contentions: (1) That since there is involved property of a value in excess of $500.00 — (it appears by stipulation of counsel that the stock represented by the certificate, together with accumulated dividends, is worth many thousands of dollars) — ownership thereof may not be proven except by the testimony of at least one credible witness and other corroborative circumstances. This contention is based upon Article 2277 of the LSA-Civil Code which reads as follows:
“all agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed five hundred dollars, which are not reduced to writing, may be proved by any other competent evidence; such contracts or agreements, above five hundred dollars in value, must be proved at least by one credible witness, and other corroborating circumstances.”
(2) It is contended that this being a certificate of corporate stock, no transfer thereof may be made except in accordance with the requirements of LSA-R.S. 12:524, which reads as follows:
“§ 524. How title to certificates and shares may be transferred
“A. Title to a certificate and to the shares represented thereby can be transferred only:
“(1) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or
“(2) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares repre- *724 scnted thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby.”
In spite of the provisions of the stock transfer statute to the effect that title to a stock certificate may be transferred only by the delivery of the endorsed certificate or by the delivery of the certificate with “a separate document containing a written assignment * * * or power of attorney * * it is necessarily apparent that there may be circumstances under which stock may be transferred even where there is neither endorsement nor what is referred to as a blank stock power.
Let us assume that an owner of stock should agree to sell it and should deliver an unendorsed certificate with the understanding that later he would execute the necessary power of attorney and that he should then refuse to do so. Surely the stock could be transferred by order of Court. In State ex rel. Johnson v. Keystone Life Insurance Company, La.App., 93 So.2d 565, 572, we quoted from LSA-R.S. 12:-532 a provision to the effect that
“The delivery of a certificate by the person appearing by the certificate to be the owner thereof without the in-dorsement requisite for the transfer of the certificate and the shares represented thereby, but with intent to transfer such certificate or shares shall impose an obligation, in the absence of an agreement to the contrary, upon the person so delivering, to complete the transfer by making the necessary in-dorsement. The transfer shall take effect as of the time when the indorsement is actually made.
“This obligation may be specifically enforced.”
The statement that such an obligation may be specifically enforced simply means that if the holder of the stock should refuse to endorse it and should refuse to execute the necessary power of attorney, a judgment of court would have the same effect. Furthermore, surely, it would not be held that if a power of attorney should be lost, under no circumstances could the stock be transferred. If so the stock would be taken out of commerce.
Our conclusion is that, on submission of proper proof, even where a power of attorney is not presented, the transfer may be ordered.
When we come to consider what is proper proof, we find that the contention of the defendant corporation is based on Article 2277 of our LSA-Civil Code, already quoted, under which the evidence required is that of one credible witness and other corroborative circumstances.
Counsel for defendant corporation say that, since the value of the stock is in excess of $500.00, such proof is necessary and they cite Hannay v. New Orleans Cotton Exchange, 112 La. 998, 36 So. 831, the facts of which to some slight extent resemble those presented here.
In answer to this contention counsel for plaintiff assert that the so-called $500.00 rule is not applicable here for the reason that, at the time of the creation of the agency under which Gottlieb made the purchase for account of Thomas, the stock was worth considerably less than $500.00, having been bought, together with other securities, for One Dollar.
The question of how much evidence is necessary should be determined as of the time of the trial of the case and not as of the time 27 years ago when the stock was bought.
Whether or not the so-called $500.00 rule of Civil Code Article 2277 is applicable, where the transfer of stock is involved, is an interesting one.
As already shown, it is provided by LSA-R.S. 12:532 that the mere delivery of a certificate “without the indorsement requi *725 site * * * but with intent to transfer said certificate or shares shall impose an obligation * * * to complete the transfer.” Whether this means that the mere delivery, if proven, is sufficient to prove ownership, we find it unnecessary to determine because we think that here the plaintiff has proven not only the delivery but also the corroborating circumstance as required by Civil Code Article 2277.
The testimony of Thomas himself, uncon-tradicted and unquestioned, is to the effect that not only was the stock bought for him by Gottlieb, but that he has been in actual, physical possession of the certificate ever since its purchase — in other words, for a period at this time of more than 25 years.
We can think of no more conclusive corroborating circumstance than the actual possession of the certificate for that length of time.
In the Hannay case on which counsel for defendants rely, the circumstances were considerably different. There there was considerable question as to whether the stock which was held by Simpson Brothers, the certificate being in the name of Robert W. Simpson, actually belonged to Hannay or to Kelly and Company, which firm it was contended owned it and had ordered it transferred to Hannay. But the most significant difference is that there, the stock certificate was actually in the possession of Simpson Brothers and the certificate itself showed that the stock stood in the name of Robert W. Simpson and was not and had never been in the possession of the plaintiff.
Counsel for defendant place great reliance on the doctrine of laches, and say that the length of time which Thomas permitted to elapse between the time of his purchase and the assertion of his claim of ownership indicates strongly that, as a matter of fact, he was not the owner of the certificate. We. think the doctrine works rather strongly the other way. The only evidence in this record to the effect that Gottlieb has any interest in the stock is the statement of the auctioneer that Gottlieb was the purchaser at the sale. If Gottlieb was the purchaser for himself and if he had any interest whatever in the certificate, surely he would not have delivered it to Thomas in the first place and would not have permitted it to remain in Thomas’ possession for a quarter of a century.
It is easy to understand why Thomas made no attempt to have the stock transferred until many years after he obtained it. He had bought it for a dollar and very obviously had never learned of the tremendous increase in its value which had not begun to take place for many years.
Why counsel for plaintiff did not provoke the appointment of a curator ad hoc to represent the absent Gottlieb is not shown, but we feel that even without such a representative of Gottlieb, it is shown that the stock belonged to Thomas, and our conclusion is that the affirmation of the judgment ordering its transfer will afford ample protection to the defendant corporation.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.