REGAN, Judge.
Plaintiff, Dairy Specialties, Inc., instituted this suit against the defendant, Philip E. Verbene, endeavoring to recover the sum of $1,069.22, representing only the expenses it incurred through defendant’s breach of two contracts of sale for an electric milking system and milk cooler, specially constructed for installation in defendant’s dairy.
Defendant pleaded the exceptions of no right or cause of action, which were overruled. He then answered and, in substance, denied entering into the contracts with the plaintiff.
From a judgment dismissing plaintiff’s suit for failure to present a prima facie case, it has prosecuted this appeal.
The record reveals that on May 17, 1956, J. R. Peppo, a salesman for plaintiff, procured an order to install a Perfection Pipeline Milker in defendant’s barn for $3,079.-70. The order, signed by defendant and Peppo on plaintiff’s behalf, called for a 20%' down payment deducted from the sale price, which was to be partially composed of an allowance of $240 for defendant’s old equipment. However, no down payment was actually made. On the order Peppo wrote: “I assure you unless the units perform, I will take back and refund down payment”.
On June 5, 1956, defendant ordered one 400 gallon Sunset milk cooler and a 3 HP condensing unit from the plaintiff at the total cost of $2,889. This order also was signed by Peppo and the defendant, and reflected a notation thereon to the effect that “If it doesn’t cool milk like factory man said, it will not cost you a cent”.
The record further reflects that the only testimony adduced on the trial hereof was that of the salesman, Peppo, and Herbert DeBuys, the president of plaintiff’s corporation.
Peppo said he solicited an order for the milking system on May 17, signed by defendant and accepted by him for plaintiff. The parties orally agreed that the down payment would be made upon installation of the machinery and the system, Peppo promised, would be installed several days after it had been fabricated in plaintiff’s warehouse. In view of the fact that defendant’s barn was irregularly constructed, a milking system had to be designed to meet his individual need. The second order also called for a specially designed milk cooler to be shipped from Minnesota, and plaintiff’s salesman promised delivery in approximately 15 days.
Before the machinery ordered was ready for installation, defendant advised Peppo that his old equipment was not functioning; the salesman then offered to repair the equipment at his company’s expense so that it could be used until the new machinery was ready and, alternatively, offered to hire and pay extra labor to manually perform the work until defendant’s equipment was ready. He declined both offers.
In an attempt to establish timely cancellation by defendant, his counsel closely questioned the salesman, Peppo, concerning delays, promised delivery date and defendant’s cancellation. Peppo admitted several *634 visits to defendant’s barn to explain the problems involved in the installation; he recalled that on several occasions the defendant orally threatened to cancel the order if delivery and installation of the system was not completed by a certain date; however, he did not remember the date of the threatened cancellation or the deadline set. On June 27th, Peppo said defendant absolutely refused to accept the equipment; therefore, plaintiff picked up several lengths of vacuum line that had been placed on defendant’s premises for use in installing the system. The pipes at this time had been cut by plaintiff, and Peppo stated that it may be possible to use portions of it on other jobs.
Herbert DeBuys, president of the corporation, testified that he had accompanied Peppo to defendant’s barn and figured the cost to defendant to install the system before Peppo, his duly authorized agent, procured the order. After describing in detail the processes involved in tailoring a milking system for defendant’s barn, DeBuys said none of the pipé used to fabricate Verbene’s equipment had been used on another job after the cancellation because the spigot connections, running from the main pipe to the individual milking stalls, were drilled in accordance with the measurements of defendant’s barn, which were irregular in size. He itemized the expenses which plaintiff incurred preparatory to the installation of the milking system as follows:
200 feet of pipe $654.00
20 inch clamps 43.00
29 spigot gaskets 58.00
Labor for drilling spigot connections in pipe 35.00
Labor for pipe cutting 25.00
$815.00
The foregoing expenditures were computed from the cost or work sheets and books, which were used and kept by the plaintiff in the ordinary course of operating its business.
The balance of plaintiff’s claim is composed of the freight charges it incurred for shipping the milk cooler to and from New Orleans. In order to minimize its loss, DeBuys testified that plaintiff returned the cooler to the manufacturer in Minnesota after defendant cancelled the order. The freight totalled $127.30.
On cross-examination DeBuys conceded that he knew that the equipment which was ordered by the defendant was badly needed; however, he pointed out that when the defendant began to encounter mechanical difficulties with the old machinery, the plaintiff offered to assist this customer at its own expense by repairing the old machinery and/or providing extra labor.
When the foregoing cross-examination of DeBuys ceased, counsel for plaintiff closed his case, subject, of course, to cross-examination of the defendant and his witnesses.
At this point in the trial hereof defendant’s counsel informed the court that neither the defendant nor any witnesses would testify on his behalf and submitted the case for judgment, based on the exhibits and on the foregoing testimony adduced herein by the plaintiff. He also reiterated the exceptions of no cause or right of action, which were subsequently overruled.
Predicated on this evidence, the trial judge ultimately expressed the opinion that the plaintiff had “failed to make out a prima facie case”, and accordingly rendered a judgment dismissing its suit. •
The question which this appeal has posed for our consideration is whether that ruling of the trial judge is so erroneous and unsupported by the law and the evidence as to warrant a reversal by us.
Counsel for the plaintiff contends that the lower court erred in holding that plaintiff had failed to make out a prima facie case because the orders hereinabove described are contracts of sale, since both parties agreed upon the objects to be trans *635 ferred and the consideration to be exchanged; therefore, defendant is liable to the plaintiff for all damages resulting from the breach of the contracts, which, in this case, are to be measured by the actual expenses incurred by plaintiff, since its claim was only asserted for, and limited to, this item of damages.
We have encountered some difficulty in clearly understanding the precise nature of the defense urged both in brief and oral argument by the defendant in opposition to the plaintiff’s claim, but as we interpret it, defendant initially insists that the orders would not ripen into contracts until the machinery had been installed and then approved by the defendant and a deposit made therefor; that defendant was justified in cancelling the contracts because of the unreasonable delays in delivery of the milk cooler and the installation of a fabricated pipeline milker; and finally defendant argues that the measure of plaintiff’s damages was not proven with that certainty required by law.
We are of the opinion that the lower court’s conclusion that plaintiff had failed to make out a prima facie case is unsupported by the evidence and the law applicable thereto and therefore erroneous.
In his answer to the suit the defendant judicially admitted that he placed the orders with plaintiff, and that the orders were accepted by it. He further judicially admitted that he refused to accept delivery when, as he asserts in his answer, he advised plaintiff that he was cancelling the order. Obviously the order, having been accepted, could not be cancel-led without legal cause. LSA-Civil Code, Article 1800[1] permits a customer to cancel his order before the seller accepts. Here, plaintiff’s acceptance of these orders from the defendant had the legal effect of ripening them into contracts.
A sale is perfected “as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid”.[2]
The purchaser is required to receive delivery and pay the price of the sale.[3] Having notified plaintiff that he would not accept delivery, defendant relieved plaintiff of any obligation to tender delivery.[4] Defendant thereby became liable to plaintiff for all damages which, in this case, are measured by plaintiff’s actual out-of-pocket expense,[5] since its claim was only asserted for, and limited to, the actual expense incurred by it as a result of defendant’s breach of the contracts.
Defendant’s counsel has insisted that his client was justified in cancelling the contracts because of the delays in delivery of the milk cooler and installation of the fabricated pipeline milker.
An examination of both orders reveals that time was not made the essence of the contracts, and when no time for *636 performance of the contract is stipulated, a reasonable time is implied, to be determined by the circumstances of the particular case.[6]
The first order, dated May 17, 1956, was to install a Perfection Pipeline Milker in defendant’s barn. It will be recalled that both Peppo and DeBuys testified that the defendant’s dairy barn was irregularly constructed and, therefore, a milking system had to be tailored to fit this individual requirement. Peppo advised the defendant that installation thereof was only a “matter of days”, but this could only occur after the pipeline had been completely fabricated in plaintiff’s warehouse.
The second order, dated June 5, 1956, called for a milk cooler, specially adapted to defendant’s requirements, which was to be shipped from Minnesota, and the salesman, Peppo, promised delivery of this equipment in approximately fifteen days. The freight bill reflects that the equipment was shipped on June 19, 1956, and the billing date was June 21, 1956.
While the record is vague as to an exact date, it appears that sometime after these contracts were entered into, defendant began to encounter mechanical difficulties with his old equipment and it was only then that he insisted upon a time limit both for delivery and installation, and on June 27, 1956, he actually informed plaintiff “that he was cancelling the orders”.
In view of the fact that both the equipment and the installation thereof had to be specially designed to meet the individual requirements of the defendant, we feel that his effort to cancel on June 27, 1956, or approximately six weeks after the first order and less than three weeks after the second, was premature, since no time for performance of the contracts was stipulated therein; consequently, a reasonable time is implied, and this is to be determined by a consideration of the circumstances of the particular case; to reiterate, this means that we must take cognizance of the fact that the equipment, some of which was manufactured in Minnesota, and the installation thereof were tailored to fit defendant’s individual requirements, which obviously required more time than usual; therefore, we do not believe that an unreasonable delay occurred so as to give the defendant legal cause to cancel these contracts.
Defendant has argued that the measure' of plaintiff’s damages was not proven with that certainty required bylaw. Plaintiff’s president testified very clearly as to the manner in which the damages were computed and there was-no conflict in or rebuttal of his testimony. He prepared from the corporation’s books,, kept in the ordinary course of business, an exact breakdown of the costs of materials, which were used out of stock, and which could not be salvaged, in fabricating a. pipeline milker for the defendant. Plaintiff does not contend that it bought special pipe or other parts as a result of the-pipeline milker contract. It used materials out of inventory and the testimony of DeBuys, its president, as to the cost of material and labor, is not only uncon-troverted and free from conflict, but it was the best evidence obtainable. This-testimony shows that plaintiff expended[1] $815 in connection with labor and material for the preparation of the pipeline.
The record also reflects that the cost of shipping a milk cooler from the factory, located in Minnesota, to New Orleans was $61.80 plus tax of $1.85, or a. two-way total of $127.30.
Therefore, the expenses which plaintiff incurred by virtue of defendant’s- breach of these contracts amount to $942.30, rather than $1,069.22, the sum for which this-suit was instituted by the plaintiff.
For the reasons assigned, the judgment appealed from is reversed, and it is now *637 ordered that there be judgment herein in favor of the plaintiff and against the defendant for the full sum of $942.30, plus legal interest from judicial demand. Defendant is to pay all costs of both courts.
Reversed.

. “The contract, consisting of a proposition and the consent to it, the agreement is incomplete until the acceptance of the person to whom it is proposed. If he, who proposes, should before that consent is given, change his intention on the subject, the concurrence of the two wills is wanting, and there is no contract.”

. LSA-C.C. Art. 2456.

. LSA-C.C. Art. 2549.

. LSA-C.C. Art. 1932. “When there is an active violation of the contract, damages are due from tbe moment the act of contravention has been done, and the creditor is under no obligation to put the debtor in default, in order to entitle him to his action.” See also Friedman Iron & Supply Co. v. J. B. Beaird Co., 1952, 222 La. 627, 63 So.2d 144.

.LSA-C.C. Art. 2555. “The purchaser, who neglects to obtain delivery of the thing sold, after having been put in default, is answerable to the vendor for the damage which he may sustain on that account, and for the reimbursement of the expense, which may have been incurred for the preservation of the thing.”

. LSA-C.C. Art. 2050, Guzzo v. Liggio, 1953, 224 La. 313, 69 So.2d 357.