162 So.2d 213 (1964)
Evariste R. RICHARD
v.
FOODS AND SERVICES, INC.
No. 6090.
Court of Appeal of Louisiana, First Circuit.
March 2, 1964.
Rehearing Denied April 6, 1964.
Writ Refused May 27, 1964.
*214 Robert F. DeJean, Opelousas, for appellant.
O'Neal & Waitz, by A. D. O'Neal, Houma, for appellee.
Before ELLIS, HERGET, LANDRY and REID, JJ.
LANDRY, Judge.
In this action plaintiff, Evariste R. Richard, a former stockholder of defendant corporation, Foods and Services, Inc. (sometimes hereinafter referred to and designated simply as "F & S"), seeks judgment against F & S in the sum of $5,500.00 allegedly due as the agreed purchase price of certain stock in a corporation known as Pumping Services, Inc., (sometimes hereinafter designated simply as "P & S"), which said stock was owned by plaintiff and transferred to defendant, F & S. Defendant concedes its agreement to purchase the stock for the amount demanded by plaintiff but maintains payment of the price was conditional and contingent in that said price, by mutual agreement between purchaser and seller, was payable solely and only out of profits to be derived from the continued operation of P & S which said corporation has since operated at a loss and is practically defunct. After trial on the merits our learned brother below concluded payment of the purchase price of the stock in question was conditional as contended by defendant and rendered judgment in defendant's favor rejecting plaintiff's demand. From said adverse decision plaintiff has appealed.
The issues presented for determination on this appeal are purely factual in nature. Since the testimony is conflicting on the vital question of whether payment of the agreed purchase price was contingent, as alleged by defendant, it appears that analysis of the testimony in some detail is warranted. The case was tried on two different dates nearly one year apart, namely, November 10, 1960 and October 11, 1961.
The record contains evidence of certain undisputed events which preceded the agreement to buy and sell the stock in question and which said circumstances are relevant to a decision herein. For some three or four years prior to the sale in question, plaintiff, Evariste R. Richard and one J. C. Autin were mutually affiliated with defendant corporation as well as P & S, Autin being President of defendant corporation at the time of the sale agreement as well as when plaintiff instituted the present action. Autin was unquestionably the principal stockholder in Foods and Services, Inc., and for all practical purposes controlled defendant corporation. However, appellant admittedly owned approximately 15-18% of the stock of defendant corporation. Appellant and appellee also each owned approximately $3,000.00 in shares of Pumping Services, Inc. whose total paid in capital stock was $13,500.00. In addition to the stock of P & S owned by appellant and Autin the remainder of the stock of said corporation was owned by one Vernon E. Koniecska, who held shares having a face value of $2,500.00 and by one Arceneaux and Broussard who held the remaining shares. It further appears that in about mid 1959, the affairs of Foods and Services, Inc. were in excellent condition considering said concern was doing a gross annual business of approximately $1,100,000.00 *215 whereas Pumping Services, Inc. was in considerable debt and on the verge of insolvency and bankruptcy. In an effort to minimize the loss anticipated because of the condition of Pumping Services, Inc., Richard and Autin, as principal stockholders in P & S, began discussions designed to reach a solution which would insure maximum salvage of their investments in P & S. They discussed not only continued operation of P & S but also its possible liquidation as well as the prospects which bankruptcy might offer. During this period it appears that either Autin, personally, or defendant corporation, went so far as to place additional funds at the disposal of P & S in an effort to bolster its faltering economy although the record does not disclose the amount or extent thereof. In or about July, 1959, Richard and Autin decided to obtain the outstanding stock owned by Arceneaux and Broussard in P & S so as to reduce the total stockholders of said corporation to three, namely, Richard, Autin and Konieczka. Pursuant to this understanding the shares of Arceneaux and Broussard were purchased in such manner that Richard and Autin became holders of P & S stock in the sum of $5,500.00 each with Konieczka owning the remaining $2,500.00 in shares. Following this development a continuing attempt was made to operate P & S notwithstanding Richard and Autin persisted in their discussions regarding the advisability of liquidation or bankruptcy as opposed to the prospects afforded by further operation of P & S. In the fall of 1959, the matter was finally resolved when, upon advice of defendant's accountant, Porche, it was decided the best way for Richard and Autin to recoup their stock investment in P & S was for Foods and Services, Inc. to purchase all P & S stock at its initial investment value following which the anticipated loss of P & S would be transferred to Foods and Services, Inc., which latter corporation would absorb the loss for tax purposes. In pursuance of this agreement the stock of plaintiff and Autin, as well as that held by Konieczka, was transferred to defendant corporation on August 31, 1959, which date marked the end of the fiscal year for P & S. Following the transfer, the stock of P & S was carried on the books of Foods and Services, Inc. as an asset and plaintiff, Autin, and Konieczka listed as creditors, the amounts due each of said parties for the value of their stock being listed on the books of Foods and Services, Inc. as accounts payable. The books of F & S did not indicate the transfer of P & S stock was subject to any condition or contingency respecting the time or manner of payment. Subsequently, in or about December, 1959, in the process of auditing the books of Foods and Services, Inc., whose fiscal year ended October 31, 1959, defendant corporation was advised the plan suggested by Porche would not work because the auditor, Glade, a Certified Public Accountant, was of the opinion a tax loss could not be properly claimed by defendant under such circumstances. At the suggestion of Glade, the unconditional entries of accounts payable to plaintiff, Autin and Konieczka appearing on the books of Foods and Services, Inc., were changed by the insertion of language indicating said accounts were payable solely out of profits, if any, to be derived from the operation of P & S.
Appellant Richard in essence testified that prior to the transfer in question he and Autin had numerous discussions concerning the insecure financial condition of P & S. Continued operation, liquidation, bankruptcy and the possible sale or transfer of the assets of P & S were all considered as potential escapes from the dilemma with which the shareholders of P & S were confronted. After consultation with the accountant Porche, it was decided, at Porche's suggestion, that all outstanding shares of P & S be acquired by plaintiff, Autin and Konieczka (Autin's brother-in-law) for transfer to defendant corporation which would purchase the stock at its initial investment value of $13,500.00. Accordingly, appellant and Autin purchased the few outstanding shares not held either by themselves or Konieczka and the transfer to *216 defendant was made and the purchase price thereof entered on the books of defendant corporation as accounts payable due plaintiff, Autin and Konieczka. Appellant understood that in this manner defendant could pay appellant, Autin and Konieczka the value of their stock and write off as a tax loss any deficit incurred as a result of the absorption of P & S. According to appellant, it was agreed and understood payment for the P & S stock would be made by defendant out of its general funds as such accrued.
E. J. Porche, accountant and tax adviser, testified that in about June, 1959, he was engaged to assist defendant's employee, Aaron LeBlanc, in performing accounting services for and advising defendant corporation in tax matters. In addition, he was to assist and advise in the conduct of the affairs of P & S which was then in considerable difficulty and faced with a loss at the end of its fiscal year which would expire August 31, 1959. He stated that at this time plaintiff and Autin were endeavoring to find a way (1) to recoup their respective stock investments from P & S and (2) transfer the anticipated loss of P & S to Foods and Services, Inc. for tax purposes. Autin and plaintiff first agreed to liquidate P & S, it being understood that on August 31, 1959, the stockholders of P & S would transfer all shares to defendant corporation, the consideration being the agreement of defendant to pay the initial investment value thereof. On September 1, 1959, defendant corporation would take possession of all assets and liabilities of P & S and a final tax return would be prepared for P & S. Porche prepared the tax return for P & S as had been agreed by plaintiff and Autin but Porche did not know whether it was ever signed and filed. Porche testified further he knew that appellant, Autin and Konieczka were entered on the books of defendant corporation as creditors in the amount of the investment value of their respective shares in P & S with no restrictions, conditions or stipulations regarding the time or manner of payment of the amounts due them. In addition, Porche testified liquidation of P & S was definitely contemplated and planned and moreover liquidation papers were, to his knowledge, drawn and prepared by defendant's attorney, the liquidation of P & S being scheduled for September 1, 1959. Porche explained that the whole scheme was his idea whereby he felt Richard and Autin could recoup their investment in P & S while charging the impending loss of said corporation to defendant company which was in better financial condition to absorb the deficit. He conceded the loss could not be fully recovered and that some portion of the burden would be carried by defendant company. He believed, however, his plan, which was accepted by Autin and Richard, would minimize the losses which they would otherwise suffer upon the complete collapse of P & S. He further testified he believed his plan workable notwithstanding another tax consultant, Glade, subsequently advised Autin to the contrary.
J. C. Autin, President of Foods and Services, Inc., testified that in late August or early September, 1959, he entered into an agreement with appellant by which defendant corporation agreed to purchase appellant's stock in P & S at its investment value but only on the condition the purchase price would be paid out of future profits of P & S, which appellant at first agreed to run and manage after the stock transfer to defendant was effected. He emphatically denied payment for plaintiff's shares was to be made from the general funds of defendant company but acknowledged no such restriction or limitation was placed of record on the books of defendant company at the time of transfer. He acknowledged the role Porche played in the transaction and conceded the purpose of the scheme was to effect a tax savings to defendant corporation. Autin maintains defendant corporation did in fact take over operation of P & S subsequent to August 31, 1959, and liquidated considerable indebtedness owed by P & S. He likewise acknowledged that considerable movable equipment owned by *217 P & S and on which a chattel mortgage was held by one Anderson, was returned to said mortgagee subsequent to August 31, 1959, pursuant to Anderson's agreement to release defendant corporation from any liability for the outstanding balance owed thereon by P & S. According to Autin the parties intended that defendant corporation would operate P & S as a wholly owned subsidiary and that a separate accounting of the operation would be kept on defendant's books with the understanding that if the operation were successful the purchase price of plaintiff's stock in P & S would be paid from that source and that source alone. Autin admitted liquidation of P & S was discussed and even conceded liquidation documents were prepared by his attorney but contends the idea of liquidation was abandoned and an attempt was made to continue operation of P & S in an effort to improve its financial status. Although he denied the accounts payable set up on the books of defendant corporation representing the purchase price of P & S stock was payable from the funds of defendant company, Autin nevertheless conceded no restriction was placed on the original entry. In this regard he further admitted the subsequent addition or notation placed of record (after filing of this suit) to the effect that the account payable in favor of appellant was payable only from profit realized by the continued operation of P & S and explained the entry was made when Glade, in the course of his audit of defendant company, advised Porche's plan would not work. Moreover, although Autin denied defendant corporation was responsible for the sale price of the stock purchased from him, plaintiff and Konieczka, he admitted the execution of an office memo wherein an automobile belonging to defendant company was transferred to him, Autin, in part payment of the $5,500.00 due him for the P & S stock he sold to defendant. It appears that no record of the transfer of the automobile was made on defendant's books and the memo was subsequently cancelled and the vehicle in question returned to F & S.
Aaron LeBlanc, defendant's bookkeeper, testified the sum due appellant for the P & S stock purchased by defendant company, was carried on defendant's books as an account payable. The stock transfer was made on August 31, 1959, and the record entry made on the same date. The account payable in favor of plaintiff was not conditional or contingent in any manner.
Emile Breaux, who became bookkeeper for defendant in April, 1961, that is between the two trial dates, testified on October 11, 1961, that defendant's books show the stock sale was originally erroneously set up as investment stock as of October 31, 1959 and that subsequently, on October 31, 1960, after an audit, journal entries were made to reverse the entry of the previous year.
Leonard Glade, Certified Public Accountant, testifying on behalf of defendant related that, upon being engaged to audit the books of defendant corporation, he advised that the Porche plan would not work and recommended the journal entry change which indicated the purchase price of the P & S stock was payable solely from the earnings of the subsidiary corporation known as Pumping Services, Inc.
Mr. John Sondheimer, general manager of defendant company from November, 1959, to April, 1961, testified the stock transaction in question was set up as a so-called purchase of Pumping Services, Inc., and the items listed as accounts payable to Richard, Autin and Konieczka with no special conditions originally noted. He further testified that, in accordance with Autin's instructions, he issued a memo to the bookkeeper indicating the purchase of a company car by Autin which purchase was set up as an account receivable of defendant company to be set off against the account payable to Autin set up in connection with Autin's sale of his P & S stock to defendant corporation. He conceded, however, the transaction was confined to the memo stage and no such official book entry was ever made.
*218 Vernon E. Konieczka, brother-in-law of Autin, in substance corroborated Autin's version of the circumstances attending the transfer in question. Konieczka and his wife (who is Autin's sister) further corroborated Autin in that they testified appellant, at a meeting of the board of directors of defendant corporation, indicated he was willing to lose his stock investment in P & S so long as he incurred no personal liability for any of the debts of that corporation and further indicated he was aware the sale price of the stock would be paid if and when P & S "got out of the red." Appellant denied having made such declarations or admissions.
Appellee's contention the parties intended to continue operation of P & S following the agreement of defendant company to purchase the stock of appellant, Autin and Konieczka and to pay the purchase price of the stock solely from the net earnings of said operation, does not, in our judgment, appear to be substantiated in the record. The record reflects that on October 28, 1959, less than one month following the stock transfer, an agreement was entered into between one Jack Anderson and P & S whereby considerable equipment belonging to P & S was returned to Anderson who held chattel mortgages thereon in return for Anderson's releasing defendant from any liability for the debts of P & S which corporation was being taken over by defendant for the purpose of liquidation and dissolution. It appears highly improbable continued operation of P & S could have been contemplated in the face of the disposal of practically all its equipment. Moreover the record further indicates that the equipment in question was subsequently purchased by Konieczka from Anderson and used by Konieczka in the operation of a business competitive to that engaged in by P & S. Assuming such operation was attempted as contended by appellee, such action was not in keeping with the prior agreement to liquidate P & S at the expiration of its fiscal year ending August 31, 1959.
While learned counsel for appellee stoutly maintains it would have been unwise and foolish for defendant corporation to purchase the stock of an insolvent concern at its face value, our careful consideration of the entire record convinces us that this is exactly what was done in this case. While such action may appear to have been economically unsound, the attending circumstances indicate the parties involved, at the time of the agreement, had good reason to believe they would benefit therefrom. Porche, the only disinterested witness familiar with the events leading up to the sale, fully corroborated plaintiff Richard. The explanation given by Porche, who has nothing to gain or lose herein, was that the sale ultimately decided upon resulted from considerable discussion designed to recoup the value of the stock held by appellant and Autin in P & S which was in obvious financial difficulty. On the recommendation of Porche, if all stock in P & S could be obtained and transferred to defendant, appellant and Autin would be paid its value by defendant corporation which would liquidate the affairs of P & S and take the loss into account on its own tax return. In this regard it is conceded that whereas defendant did pay some obligations owed by P & S, defendant likewise claimed a loss of $16,000.00 on its own income tax return and benefited therefrom to an undisclosed extent. We likewise perceive no merit in defendant's argument it is unreasonable to suppose that defendant corporation would unconditionally purchase the stock of an admittedly insolvent concern at its face value. The simple facts are both plaintiff and Autin expected to be paid the full value of their stock by defendant which would recover such portion thereof as could be regained by defendant minimizing its own taxes by claiming the loss resulting from the sale and absorption of P & S.
We believe the record substantiates beyond all reasonable doubt the parties herein *219 entered into the aforesaid arrangement in complete good faith and with the expectation of carrying the transaction to completion. Porche's testimony clearly indicates the entire scheme was intended to permit plaintiff and Autin to recoup their investment in P & S. That this was indeed the mutal intention of plaintiff and Autin is substantiated by the fact that at least a portion of the plan was executed. The certificates were in fact delivered to defendant; liquidation papers were prepared by defendant's attorney and a final tax return was prepared on behalf of the corporation proposed to be liquidated. In pursuance of the transfer plaintiff, Autin and Konieczka were shown as creditors of defendant to the extent of the value of the P & S stock transferred to defendant. Of further significance in this regard is the testimony of appellant, confirmed by that of Konieczka, to the effect that on one occasion Autin offered to give appellant a promissory note to secure the purchase price of appellant's stock and appellant declined on the ground that Autin's word was sufficient for appellant.
The fact that subsequent to reaching the agreement of sale the majority stockholder of defendant corporation was advised that the tax scheme would not produce the desired results, does not relieve defendant of the obligation to make payment for the stock purchased. Said circumstance can have no effect upon the validity of an agreement previously contracted. It is an elementary rule of law that a contracting party may not avoid his obligations seriously and legitimately assumed merely because the transaction ultimately proves unprofitable. If he enters into a contract with the hope and expectation of legitimate gain he may not thereafter disavow his solemn obligation on the ground the matter has culminated adversely to his interest. Harris v. Lillis, La.App., 24 So.2d 689. Not only is appellant corroborated by Porche, we believe he is further substantiated by the attending facts and circumstances. We believe it unreasonable and illogical that the parties could have intended to pay for the stock only out of future earnings of P & S considering it was the intention to liquidate said concern and, in pursuance of such intention, considerable property of P & S was relinquished shortly following the sale in question.
It is settled law that to constitute a contract of sale three essentials are required, namely, the thing, the price and the consent. LSA-C.C. Article 2439. In the case at bar we find all three essential elements present. The thing sold was appellant's stock in the corporation known as Pumping Services, Inc. Admittedly the price therefor was $5,500.00. Defendant's consent is likewise conceded, the only area of dispute being the source from which the contract price was to be paid. This latter question, as we have herein demonstrated, must be resolved in favor of appellant. In holding to the contary, our esteemed brother below erred.
That the time of payment was not specifically set is of no moment. When no time for the performance of the contract is stipulated, a reasonable time is implied. What constitutes reasonable time under such circumstances is determined in the light of the circumstances of each particular case. LSA-C.C. Article 2050, Dairy Specialties, Inc. v. Verbene, La.App., 117 So.2d 632. In the case at bar we believe the record shows the time of payment was set at such time as the general fund of defendant corporation was able to meet the amounts due. It is significant that appellee has not herein asserted its inability to pay at the time of institution of suit. On the contrary, the record leaves but little doubt that defendant was able to meet the obligation at the time suit was filed. It is clear, therefore, defendant's obligation to pay the purchase price agreed upon matured prior to the institution of appellant's action.
*220 We find no merit in appellee's alternative contention there was no sale because appellant failed to endorse the stock. It is undisputed that at the time of confection of the agreement, appellant's stock was delivered to, held by and entered upon the books of defendant corporation as an asset of said company. Under such circumstances the transfer was complete as between the parties to the transaction and appellee was thereby vested with the right and privilege of demanding endorsement. Good v. Breazeale, La.App., 148 So.2d 766, certiorari denied, 244 La. 141, 150 So.2d 766. As between the parties to an agreement to buy and sell negotiable stock LSA-R.S. 12:524 does not, as appellee contends, provide the exclusive methods by which such instruments may be transferred. Where the circumstances show an agreement to sell accompanied by physical delivery of the stock certificate to the purchaser who takes possession and assumes control and ownership thereof, the transfer is complete notwithstanding the failure of vendor to endorse the certificate. Thomas v. Southdown Sugars, Inc., La.App., 95 So. 2d 721, reversed, 237 La. 245, 110 So.2d 738; State ex rel. Johnson v. Keystone Life Ins. Co., La.App., 93 So.2d 565.
Accordingly, it is ordered, adjudged and decreed the judgment of the trial court in favor of defendant Foods and Services, Inc. be and the same is hereby annulled, reversed and set aside and judgment rendered herein in favor of plaintiff-appellant, Evariste R. Richard, and against defendant, Foods and Services, Inc., in the full sum of FIVE THOUSAND FIVE HUNDRED and 00/100 ($5,500.00) DOLLARS, together with legal interest thereon at the rate of Five (5%) per cent per annum from date of judicial demand, until paid; costs of these entire proceedings to be paid by defendant, Foods and Services, Inc.
Reversed and rendered.
LOTTINGER, J., recused.