COLE, Judge.
The issue in this case is whether or not the parties to a contract intended the contract to be one with a term.
These are the facts giving rise to this litigation. Defendant, Leslie “Fly-ro” Jar-reau, contacted Robison Fence Company concerning the erection of a fence around his residential swimming pool located in Lakeland’ Louisiana. On April 7, 1982, Ro-bison’s salesman, Joseph Janis, visited Mr. Jarreau at his residence in order to discuss the fence. A contract was signed wherein Robison Fence agreed to provide a chain link fence with aluminum slats for a total price of $1,832.75. The contract was signed by Mr. Jarreau and Mr. Janis, and contained the following language:
“NO CONDITIONS, AGREEMENTS OR STIPULATIONS, VERBAL or OTHERWISE, save those mentioned above shall be recognized.
* * * * ¡: *
“If contract is cancelled a 25% charge of the total contract price will be charged.”
Mr. Janis also executed a separate document, entitled “Completion Certificate.” On this paper he provided information concerning the type of materials to be used and drew a sketch of the area to be fenced. At the top of the page was a space for “Estimated Start Time.” That space was left blank and an arrow was drawn to another space which read “Date Set.” In that blank Mr. Janis had written “Apr. 14, 82.” In the blank beside the words “Date Comp.” he wrote “Apr. 19, 82.” Other information was also provided, such as the total footage of fence and the number of gates.
The posts were set sometime on or about April 14, 1982, but the fence had not been completed by April 19. Sometime shortly thereafter Mr. Jarreau telephoned Mr. Ro-bison and cancelled the contract. Robison Fence filed suit.
In its petition, Robison Fence prayed for $834.59 for labor and material expended on the project, $458.19 (25% of the total contract price) as a penalty for cancellation, reasonable attorney’s fees, court costs and interest. After trial on the merits judgment was rendered in favor of defendant and plaintiff’s case was dismissed. The *1273 court found the parties had intended the contract to be one with a “term." La.Civ. Code art. 2048.[1] The trial court cited La. Civ. Code art. 2057[2] and held that since the contract had not been completed by the expiration of the term (i.e!, by April 19, 1982), Mr. Jarreau was justified in cancel-ling. Robison Fence filed this appeal.
Appellant raises three errors on appeal but in essence makes one main argument: the court erred in concluding the contract was one with a term. More specifically, the court erred in considering the “completion certificate” to be a part of the contract since such certificate was not signed by the parties. Appellant points out there is no mention of a completion date on the face of the contract itself.
In reasons for judgment, the trial court stated the initial issue to be decided was whether or not the completion certificate was a part of the contract. The court cited La.Civ.Code art. 1945 which states in part that courts must give legal effect to contracts “according to the true intent of all the parties.” The court found it had been proven the parties intended the contract to be for a fixed term, terminating April 19, 1982.
We disagree with this factual finding of the trial court. Mr. Janis testified the completion certificate was for the benefit of the work crew. The crew was to use the technical information provided on the certificate when installing the fence. However, even assuming the certificate was intended to be a part of the contract, we must still ascertain what was meant by the words “Date Comp. Apr. 19, 82.” When the meaning of words in a contract is doubtful, we must attempt to ascertain the common intent of the parties, rather than rely on the literal meaning of the words. La.Civ.Code art. 1950.
In determining whether or not the parties intended for the contract to be one that was valid only until April 19, 1982, we must examine the circumstances surrounding the perfection of the agreement.
Mr. Janis testified that the “completion date” was merely an estimated date in that (as he explains to all customers) the erection of a fence is always contingent upon the weather. “Date set” meant the date the posts were to be set into the ground. He stated he gave a copy of both documents to Mr. Jarreau.
A close examination of Mr. Jarreau’s testimony reveals he was unaware of a specific “completion date.” It is true he was concerned with having a fence built in a speedy manner. He stated he asked Mr. Janis at their initial meeting when the fence would be started and when it would be completed. However, Mr. Jarreau did not testify Mr. Janis ever promised the fence would be completed by April 19. Mr. Jarreau’s testimony concerning the various dates shows he was confused about this issue. The contract was perfected on Wednesday, April 7, 1982. Mr. Jarreau stated Mr. Janis promised the fence would be started “Wednesday and he’d be finished by Friday or maybe Monday, which was [Monday] the 12th, not the 14th.” This cannot be accurate because it would involve the fence company starting work the same day the contract was entered into and finishing work prior to the date the posts were scheduled to be set.
Further evidence of Mr. Jarreau’s lack of knowledge of the completion date was apparent when he was questioned about the completion certificate. When asked if he had ever seen that document, he responded he had. When questioned further about the information supplied in the document (i.e., the various dates) he elaborated as follows:
*1274 “I remember the drawing of the pool area. That was filled in, and I’m sure the rest was, too, but I just, you know, I didn’t look at all of that. The main thing I was concerned with was the drawing of the pool area where the fence was going to go. I didn’t look at hardly anything else.” (Emphasis added.)
Mr. Jarreau could not specify as to what date the posts were set, although he was certain they were not set by April 14. He waited approximately a week after the day the work was to have begun and then called Robison Fence to find out the cause of the delay. When the' fence still was not started within the following few days, he phoned the fence company again and spoke to Johnnie Robison. Robison promised him the truck was loaded and work would begin immediately. That same afternoon most of the posts were set. Mr. Jarreau testified he waited “another bunch of days,” no further work was done, so he called and cancelled.
Counsel for defendant asked defendant if the posts had been set by the date the contract was to have been completed. Mr. Jarreau responded: “No. What day does the contract say it was supposed to be completed?” Mr. Jarreau testified he did not receive a copy of the completion certificate. He admitted he had signed the contract although he did not read it.
A reading of the pleadings and the testimony in this case, when taken as a whole, reveal Mr. Jarreau failed in his burden of proving the parties intended the fence to be completed by April 19, 1982.[3] His testimony showed he wanted the fence to be built within a reasonable time and that he was aggravated by the fence company’s delays in beginning and completing the job. However, nowhere in his testimony does he state he intended the fence to be completed by a certain date or that Mr. Janis assured him it would be completed by a “deadline.” He admitted he did not read the information provided in the completion certificate (including the date) and that he was concerned only with the drawing of the pool area.
Since we conclude the parties did not intend the contract to be one with a term, we must then determine if Robison Fence Company failed to perform the contract during a “reasonable time period,” in light of the circumstances. See, Owens v. Robinson, 329 So.2d 766 (La.App.2d Cir.1976); Richard v. Foods and Services, Inc., 162 So.2d 213 (La.App. 1st Cir.1964), writ denied 246 La. 347, 164 So.2d 351 (1964).
There was some dispute at trial over the precise date of cancellation. Mr. Robison testified unequivocally that Mr. Jarreau cancelled the contract on April 20, 1982. He stated the crew was not able to complete the fence on April 19 because it had been raining. A letter written by counsel for Robison Fence to Mr. Jarreau’s attorney stated the contract was cancelled on April 23. Mr. Jarreau was not certain about the date of cancellation although he felt sure it was sometime after April 20. Based on Mr. Jarreau’s own testimony concerning the approximate lapse of time between the three phone calls he made to Robison Fence, the cancellation was at most a week and a half beyond April 19. We do not find this to be so unreasonable a delay as to justify cancellation. Therefore, since Mr. Jarreau was not justified in can-celling the contract, the penalty clause of the contract applies and plaintiff is entitled to recover 25% of the contract price or $458.19, plus legal interest from date of judicial demand. The contract also calls for reasonable attorney fees in the event legal action is required; therefore, we award $200 attorney fees to plaintiff’s attorney.
As regards plaintiff’s demand of $834.59 for labor and materials expended on the job, we note the larger part of that sum is allocated for the fencing slats still in the possession of plaintiff and which, presumably, can be utilized by plaintiff for another project. Under this circumstance, *1275 we do not consider the contract to contemplate the award to plaintiff of both the contractual penalty and the sum expended on the job. The tenor of the contractual relationship between the parties in this case demonstrates the penalty provision is to protect plaintiff from loss and not to impose punitive damages upon the defendant.
For the foregoing reasons,
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Johnnie Robison, d/b/a Robison Fence Company, and against Fly-ro Jar-reau, for the sum of $458.19, plus legal interest thereon from date of judicial demand until paid; and that there be further judgment in favor of Johnnie Robison, d/b/a Robison Fence Company, and against Fly-ro Jarreau for $200, representing attorney fees. All costs of court at both the trial and appellate levels, are assessed against defendant.
REVERSED AND RENDERED.

. Art. 2048. “The time given or limited for the performance of an obligation, is called its term."

. Art. 2057:
"Where a term is given or limited for the performance of an obligation, the obligor has until sunset of the last day limited for its performance, to comply with his obligation, unless the object of the contract can not be done after certain hours of that day.”

. We note although Mr. Jarreau was the defendant in this suit, he had the burden of proving by a preponderance of the evidence that he was justified in cancelling the contract.