## TAYLOR v. DAYNES et al.

No. 7388. Decided May 25, 1950. (218 P.2d, 1069).

See 18 C. J. S. Corporations, sec. 395.

*Rawlings, Wallace, Black & Roberts,* Salt Lake City, *Dwight L. King,* Salt Lake City, for appellant.

*David H. Bybee,* Salt Lake City, *Allen & Ruckenbrod,* Salt Lake City, for respondent.

LATIMER, Justice.

This is an appeal by J. Fred Daynes from a judgment awarding $6,000.00 plus interest from July 21, 1947, to the respondent, Dr. Marvin S. Taylor, as the purchase price for 6,000 shares of stock in the Daynes Optical Company. Appellant contends that there was no purchase or agreement to purchase the stock, that title to the stock had never passed to him, and that the lower court erred in entering judgment in favor of respondent.

The record fairly establishes that from 1940 until 1944 the respondent, Dr. Taylor, was employed by the Daynes Jewelry Company as an optometrist. In 1944, appellant J. Fred Daynes, and his two sons, John F. Daynes and Lincoln A. Daynes, included as defendants in the trial of the case, together with respondent formed a corporation, known as the Daynes Optical Company. At that time respondent severed his affiliations with the jewelry company and commenced working for the optical company. Each of the incorporators received one-fourth, or 6,000 shares of stock in the new corporation, and Dr. Taylor paid $6,013.60 for his one-fourth interest. Subsequently, the parties disagreed on matters regarding the operations of the corporation and respondent expressed a desire to sell his stock and discontinue his affiliation with the optical company. On July 20, 1947, the four active incorporators, together with one Robert Head held a meeting at which time the matter of the sale of Dr. Taylor's stock was discussed. On Monday, July 21, 1947, respondent took his stock certificate to the office of appellant. Appellant accepted the stock certificate and dictated and signed the following:

"To Whom It May Concern: This is to advise that J. Fred Daynes, John F. Daynes and Lincoln A. Daynes *have this day purchased from Marvin S. Taylor stock certificate number 2,* being all of his stock and interest in the Daynes Optical Company. Respectfully (signed) *J Fred Daynes.*" (Emphasis added.)

Respondent then turned his stock certificate over to appellant.

The stock certificate was kept by the appellant until February, 1948, when respondent called on him, and, failing to receive any money, took the stock certificate. On advice of counsel, he then indorsed it to J. Fred Daynes, John F. Daynes and Lincoln A. Daynes, dated the indorsement July 21, 1947, and returned the stock certificate to appellant. On April 22, 1948, respondent commenced this

action against appellant and his two sons, alleging the purchase and sale of respondent's stock certificate and claiming $6,000.00 plus interest as payment for said stock. A motion for nonsuit was granted on behalf of the two sons, but denied as to appellant. Afer appellant had introduced evidence to support his defense the court found he had purchased the stock certificate on July 21, 1947, for the sum of $6,000.00, and awarded judgment to the respondent for that amount. The evidence in dispute will be detailed as the specific contentions are discussed.

Appellant bases his appeal upon two principal contentions: (1) the court's finding that on July 21, 1947, the appellant purchased from plaintiff 6,000 shares of stock in the Daynes Optical Company for the sum of $6,000.00 is not supported by any evidence; and (2) there was not a contract of purchase and sale on July 21, 1947, or at any time thereafter as title to the stock certificate did not pass to appellant. We will discuss these contentions in the order mentioned.

In support of his first contention appellant asserts that respondent at no time believed he had a sale and purchase agreement with appellant, since the indorsement on the certificate was made to appellant and his two sons; that the respondent had brought this action against the three; and that the trial court, after dismissing the action as to the two sons, had constructed a contract of purchase and sale between appellant and respondent which neither of the parties had intended. In analyzing this contention we must accept the evidence most favorable to the respondent, and even though subsequent acts of a party may cast some doubt on his testimony, the trial court is the forum in which inconsistencies and doubtful actions must be resolved. Since the trial court made the findings of fact in respondent's favor, this court will not upset those findings if there is evidence to sustain them.

Respondent, on his direct examination, testified that at a directors meeting held on July 20, 1947, they (appellant and his sons) agreed to purchase his stock; that Robert Head was interested in buying stock in the company and said that $6,000.00 was a fair price for the 6,000 shares owned by respondent; that they all discussed the value of the stock; and that appellant told him they would arrange things so that respondent could get his money, and for respondent to call on him the following morning, bring his stock, and he, appellant, would give respondent some form of a receipt for this stock. On cross examination respondent testified that John F. Daynes and Lincoln A. Daynes had not individually agreed to purchase, but as to J. Fred Daynes he testified as follows:

"Q. Now you won't tell the Court that Mr. Daynes (J. Fred Daynes) at any time mentioned, personally mentioned $6,000.00 to you—that is true, isn't it? A. The amount, $6,000.00, was mentioned at the meeting on July 20th.

Q. I will ask you again. Did Mr. Daynes at any time tell you, personally tell you, that he would pay you $6,000.00, or any amount for this stock? Now you answer that—yes or no. A. Yes.

"Q. When did he tell you that? A. At the meeting on July 20th."

Conceding that the conversations at the meeting on Sunday, July 20th, regarding the sale of this stock were participated in generally by all of those present, nevertheless, the quoted evidence justified the court in concluding that appellant had participated in the discussions and had accepted respondent's offer to sell for $6,000.00. Respondent's version of the agreement is fortified by appellant's subsequent conduct. On the following day appellant accepted the stock certificate from respondent, and, in a letter, the contents of which are previously quoted, acknowledged that the stock had been purchased. Moreover, the appellant kept possession of the stock certificate until February 27, 1948, and the court could find that during the period from July 21, 1947, until February 27, 1948, respondent had on as many as fifteen occasions requested that appel-

lant pay him the $6000.00 due for the stock and that appellant had expressed a willingness to do so and had never in any of the conversations denied that he had purchased the stock from respondent or that he was indebted to respondent.

Appellant attempts to avoid the acknowledgment contained in the letter of July 21, 1947, by asserting that it was not intended that it be a sale or evidence of a sale and purchase; but that its real purpose was merely to serve as a memorandum which respondent could ■ show to the management of the Anderson Jewelry Company in order that the respondent could secure a position with them. The trial judge was unimpressed with this contention and we see no reason why he was required to place such a construction upon the letter. It clearly acknowledges a purchase of the stock from the respondent and there is no reason why the court should reject the plain purport of the letter in favor of appellant's assertion that its purpose was to deceive a potential employer of the respondent. Courts are inclined to look with disfavor upon contentions which suggest ulterior purposes.

The appellant further asserts the evidence establishes that the purported terms of the contract of July 21, 1947, are so vague, indefinite and uncertain that it is impossible to determine the intent of the parties, and therefore, the court erred in construing that there was a con- ■ tract made on that date. Appellant cites the case of *Hi-Way Motor Company* v. *Service Motor Company et al.*, 68 Utah 65, 249 P. 133, decided by this court in 1926. We are of the opinion, however, that that case is distinguishable from the instant case. In the present matter the court concluded that the statements of J. Fred Daynes on July 20, 1947, and his written letter of July 21, 1947, were sufficient to definitely establish a contract of sale. The type of contract with which we deal may be established by writing, by statements, partly by writing and partly

by statement, or by inference from the conduct of the parties. When the factors present in this action are molded together the contract is not so vague, so indefinite, and so uncertain that it is impossible to determine the intent of the parties. On the contrary, the evidence is such that the court could reasonably conclude that the terms and conditions were fixed and understood by both parties.

Appellant's second contention is that there could not be a sale on July 21, 1947, as respondent's evidence, at best, establishes merely a contract to sell; and further, that a proper interpretation of Section 18—3—9, U. C. A. 1943, precludes the consummation of a sale prior to the time the stock certificate was properly indorsed.

We are of the opinion that the contract as established is not executory, but is a contract of present purchase and sale. This court, in the case of *Jones* v. ■ *Commercial Investment Trust,* 64 Utah 151, at page 163, 228 P. 896, at page 900, discussed the differences between a sale and a contract to sell. *Woolley,* District Judge, speaking for this court, explained the distinction as follows:

"A sale involves a present transfer of the title in the goods from the seller to the buyer. A contract to sell implies that the title in the goods remains vested in the seller and is to be transferred to the buyer at some future time. Whether a contract is one of sale or an executory contract to sell depends always upon what the parties to it intend in regard to the time when the title in the property is to go to the buyer. *If they intend the title to be transferred when the contract is made, it is a contract 'of sale; otherwise it is a contract to sell. The intention of the parties is the important and controlling fact to be considered and given effect in determining the nature of a contract in this regard. There may be a sale, a present passing of the title, notwithstanding that by the terms of the agreement the right to the possession of the thing sold is retained by the seller until the purchase price is paid.* The intention must be determined from a consideration of the nature and terms of the contract, usages of trade, the conduct of the parties, and the circumstances of the case. *If no contrary intention appears from such a consideration, then the law presumes, where the contract pertains to a specific chattel, in a deliverable state, that the parties intend the title to pass when the con-*

*tract is made, and this is true regardless of the fact that payment of the price or delivery of the goods, or both, be postponed."* (Emphasis added.)

In the instant case, the intention of Dr. Taylor is clearly shown as one of attempting and desiring to divest himself immediately of all of his interest in the Daynes Optical Company. On the other hand, appellant's statements, acts, and conduct at the meeting; his act subsequently in dictating and signing the letter of July 21, 1947, which included the phrase "have this day purchased"; and his acceptance of possession of the stock certificate indicated an intention to treat the contract as one of immediate purchase and the present passing of some interest in and to the certificate and shares of stock evidenced thereby.

Appellant contends, however, that the lower court's finding of a contract of sale is at variance with the provisions of Section 18—3—9, U. C. A. 1943, which provides as follows:

"The delivery of a certificate by the person appearing by the certificate to be the owner thereof without the indorsement requisite for the transfer of the certificate and the shares represented thereby but with intent to transfer such certificate or shares shall impose an obligation, in the absence of an agreement to the contrary, upon the person so delivering to complete the transfer by making the necessary indorsement. The transfer shall take effect as of the time when the indorsement is actually made. This obligation may be specifically enforced."

Inasmuch as this section is a part of the Stock Transfer Act, it must be interpreted in the light of the definitions included in that act. These are contained in Section 18—3—20, U. C. A. 1943, and the portions pertinent to this case are as follows:

"(1) In this chapter, unless the context of subject matter otherwise requires:

\* \* \* \* \* \*

" 'Transfer' means transfer of legal title.

" 'Title' means legal title and does not include a merely equitable or beneficial ownership or interest."

Within the meaning of these definitions, therefore, respondent could at least transfer all his equitable or bene-

ficial interest in the stock on the date the contract was executed; and could still retain legal title until full payment of the purchase price, or until such time as he indorsed the stock. He testified that his reason for not indorsing the stock at the time he transferred possesion of the certificate was that he withheld such indorsement pending payment of the purchase price. We are of the opinion that his failure to indorse the stock certificate under those circumstances would not delay the date of purchase and sale of the stock even though the date of transfer might not be until a later date.

In the case of *Davies* v. *Semloh Hotel, Inc.*, 86 Utah 318, 44 P. 2d 689, decided in 1935, this court considered the question of when title to stock passed under an agreement by employer to repurchase stock sold to employee if said employee were discharged from his employment. We there held that title to the stock passed immediately upon discharge of the employee, even though possession of the stock certificates was retained by the employee for a time after the discharge. Mr. Justice MOFFAT, speaking for the court said, 86 Utah at page 323, 44 P. 2d at page 691:

"Under the terms of the contract, whether or not the property in the stock passed to the buyer, the defendant was bound by his contract to repurchase and pay for the stock. The appellant having refused to pay for the stock according to the terms of the contract, the seller had the right to maintain his action for the agreed price. This transaction did not contemplate an option on the part of the defendant to repurchase the stock, nor did it constitute what might be termed an offer to purchase the stock. It was a binding contract upon both parties subject only to a condition subsequent, viz., the discharge of the plaintiff from the employment contemplated in the contract. The condition subsequent having been fulfilled in the discharge of the plaintiff and the plaintiff having made tender of the stock, there would seem to be no good reason why he should not recover. *It was the clear intention of the parties that the title to the stock should pass to the defendant upon the happening of the events as outlined upon which defendant became bound to pay.*

"Under the provisions of 81—2—2, R. S. Utah 1933, it is provided:

" '(1) Where there is a contract to sell specific or ascertained goods,

the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

" '(2) For the purpose of ascertaining the intention of the parties regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstance of the case.[1]

"From the terms of the contract it was the intention of the parties that the delivery of the stock on the part of the plaintiff and the payment therefor on the part of defendant were to be concurrent transactions. The plaintiff evidently had the right to make tender of the stock, but still retain possession until payment was made. R. S. Utah 1933, 81—4—2. *Although the property in the stock may have passed to the buyer, the unpaid seller of stock, as such, has a lien on the stock or right to retain it for the purchase price while he is in possession of it and until payment therefor is made. * * *"* (Emphasis added.)

This being an action to recover the contract price of $6,000.00 and the trial court having found that the contract was one of immediate purchase, the time of indorsement is not material to appellant's liability so long as the indorsement is made upon tender of the purchase ■ price. If, on July 21, 1947, the appellant obligated himself to pay for the purchase price of this stock, then the mere fact that transfer was *not made* would not defeat respondent's right to recover. Assuming without deciding that a transfer of the stock is necessary in this type of transaction to pass legal title, the passing of equitable or beneficial title is consideration for the promise to pay. A seller of stock should be at liberty to protect his certificate from passing into the hands of innocent third parties until such time as payment is tendered and if the certificate is delivered unconditionally but *indorsement is withheld for security reasons*, the failure to indorse does not evidence an intention not to complete the sale, it may disclose a completed transaction protected against subsequent transfers until the purchase price has been received.

Section 18—3—9, U. C. A. 1943, supra, contemplates that one who receives an unindorsed certificate from the owner with intent of the latter to transfer the certificate

and the shares represented thereby acquires an interest in both and can require legal transfer by paying or tendering the amount of the purchase price. By granting a holder of an unindorsed stock certificate the right to specifically enforce an indorsement, the legislature acknowledged the possibilities of acquiring an interest in the certificate by sale or otherwise without a completed indorsement. The appellant acquired an interest in the stock certificate on July 21, 1947, and should not escape paying therefor.

The judgment is affirmed, costs to respondent.

PRATT, C. J., and McDONOUGH, J., concur.

WADE, Justice (concurring).

With grave doubts I concur. I have no difficulty in concluding that J. Fred Daynes agreed to purchase this stock jointly with his two sons who he thought were joining in that transaction. My difficulty is in determining that there was a meeting of the minds whereby he agreed to purchase the property alone without his two sons joining in the deal. It is clear that both the respondent Taylor and the appellant J. Fred Daynes thought that if there was a sale at all it was to the three of them jointly and not to appellant alone, for they discussed only such a sale on July 20th. On July 21st appellant acknowledged that the three had purchased the stock, and in February respondent endorsed the stock certificate to the three of them and finally sued all three of them and not merely the appellant alone. The fact that a person agrees to purchase property jointly with two other persons does not seem to me to be equivalent to agreeing to purchase such property individually, where the other persons are found to have not agreed to join in such purchase. I therefore entertain grave doubts that the evidence is sufficient to sustain a finding that the appellant purchased this stock.

WOLFE, J., concurs in the results.