**McCULLEN et ux.**

**v.**

**HEREFORD STATE BANK et al.**

No. 14882.

United States Court of Appeals
Fifth Circuit.

June 23, 1954.

Rehearing Denied Aug. 6, 1954.

Chauncey Trout, Lubbock, Tex., Klett, Bean & Evans, Lubbock, Tex., for appellants.

Cowsert & Bybee, Hereford, Tex., Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, Tex., for appellee, Hereford State Bank.

James W. Witherspoon, Hereford, Tex., Earnest L. Langley, Hereford, Tex., Clayton Heare, Amarillo, Tex., Ray G. Cowsert, Hereford, Tex., John D. Aikin, Wayne E. Thomas, Hereford, Tex., for other appellees.

Before STRUM, Circuit Judge, and DAWKINS and HOOPER, District Judges.

HOOPER, District Judge.

Appellants, J. T. McCullen and his wife, Catalina Samoyoa McCullen, here contend that the trial court, sitting without a jury, committed error in refusing to grant them judgment against Appellees, Hereford State Bank, Frederick C. Klinke and his wife, Anna B. Klinke. The testimony adduced before the trial judge is without any material conflict and discloses the following facts:

Prior to November 5, 1951, Appellants were owners of shares of preferred and common stock in Western Acceptance Corporation. By fraudulent representations upon the part of one F. J. Wilson, they were induced to transfer and convey to the said Wilson some of this stock, and the transfer was duly entered on the books of the corporation and new certificates of stock issued to Wilson. Subsequently Wilson made two sales from the foregoing stock from himself to Appellees Frederick C. Klinke and his wife. We are not here concerned with the second sale for the reason that the stock was never delivered

and judgment thereon was rendered by the trial court against Hereford State Bank and not appealed. As to the first sale, however, these facts appear:

On or about November 5, 1951, the Klinkes contracted with Wilson to buy from him certain shares of this Western stock for the sum of $7,000.00, and in order to raise this money they endorsed and delivered to Wilson a number of Series E defense bonds having a maturity value of $8,000.00 and a redemption value of $6,680.00 (not of $7,000.00 or more as the parties contemplated). From the proceeds of these bonds, which were endorsed by the Klinkes and delivered to Wilson, he was to pay himself $7,000.00 for the above stock and pay over the excess to the Klinkes.

On November 6th Wilson took the bonds to Appellee, Hereford State Bank, a duly qualified agent of the United States Treasury Department, and delivered them to Travis W. Bain, Executive Vice-President, who was acquainted with Wilson and well knew that Wilson was not a payee named in the bonds. The bank cashed the bonds and paid to Wilson the sum of $6,680.00 which Wilson retained. On November 15th Wilson delivered to the Klinkes the certificates of stock in Western as contracted for. The net result of the foregoing was this, the Klinkes in effect had paid Wilson the proceeds of their bonds as agreed, and Wilson in return had transferred to the Klinkes the certificates of stock, all according to the terms of sale between the parties.

The McCullens, unfortunate victims of the unconscionable fraud perpetrated by Wilson, by their counsel earnestly contend as follows:

When Wilson acquired the Western stock from Appellants through fraud, he thereby became a constructive trustee for benefit of Appellants and when Wilson transferred the stock to the Klinkes and received the bonds from them, Wilson became a constructive trustee of the bonds for the benefit of Appellants. That when Wilson, trustee of the bonds for Appellants, cashed the bonds at the Hereford State Bank under circumstances in which the bank was a wrongdoer, performing a criminal act, the bank was not an innocent purchaser but became trustee of the bonds for Appellants, and that a court of equity may reach trust property in the hands of any person not innocent.

As to the bank, Appellants contend that the bonds were cashed in violation of Treasury Regulation 359.29 passed in pursuance of Title 31, section 757c, United States Code Annotated, which requires that the bonds must be signed in the presence of the paying agent, who must satisfy himself as to the identity of the payee.

(1) In our opinion the rights of the parties of this case are controlled by provisions of the Texas Uniform Stock Transfer Act, Vernon's Ann.Civ.St.[1]

[1.] As quoted in brief of Appellee such statute reads in part as follows:

"Art. 1358–6. Indorsement effectual notwithstanding fraud, duress, mistake, revocation, death, incapacity or lack of consideration

"The indorsement of a certificate by the person appearing by the certificate to be the owner of the shares represented thereby is effectual, except as provided in Section 7, though the indorser or transferor:

"(a) Was induced by fraud, duress or mistake, to make the indorsement or delivery; or

"(b) Has revoked the delivery of the certificate, or the authority given by the indorsement or delivery of the certificate; or

"(c) Has died or become legally incapacitated after the indorsement, whether before or after the delivery of the certificate; or

"(d) Has received no consideration. Acts 1943, 48th Leg., p. 722, ch. 397, § 6.

"Art. 1358–7. Rescission of transfer

"If the indorsement or delivery of a certificate:

"(a) Was procured by fraud or duress; or

"(b) Was made under such mistake as to make the indorsement or delivery inequitable; or

Article 1358–6 of that Act provides in effect that the endorsement of a certificate by the owner is effectual (except as hereinafter provided), though the endorser or transferor was induced by fraud to make the endorsement effectual, and the endorser received no consideration therefor.

Article 1358–7 provides in effect that if the endorsement was procured by fraud the possession of the certificate may be reclaimed and the transfer rescinded, unless "the certificate has been transferred to a purchaser for value in good faith without notice of any facts making the transfer wrongful." The foregoing statute is peculiarly applicable to the facts of this case. Appellants were induced by fraud to endorse their certificates of stock over to Wilson, they received in effect no consideration therefor, and it appears the certificates were transferred to purchasers (the Klinkes) for value, without notice to the latter of any facts making the transfer wrongful. As good title to the stock vested in the Klinkes, neither could they nor the bank be held liable for any alleged wrongful conversion of the same.

(2) Neither may Appellants recover from Hereford State Bank upon the ground that the officer of the bank who actually cashed the bonds knew that the person to whom he paid the proceeds was not the same person appearing therein as the owner. Under the particular facts of this case it appears that these bonds, the property of the Klinkes, were cashed with the latter's express consent, the proceeds were paid over to Wilson in accordance with their wishes and pursuant to their agreement, and that they, the Klinkes, in return therefor received the certificates of stock which constituted the consideration for their transfer of the bonds. The Klinkes, who endorsed the bonds for collection and delivered the same to Wilson, are not attacking the transfer of the bonds or the cashing of the bonds by the bank and payment by the latter of proceeds to Wilson, for they have received the agreed consideration for the same. Neither can it be said that the method by which the bonds were redeemed by the bank constituted legal causation for the loss suffered to Appellants; their loss was effectuated by the fraudulent conduct of Wilson in obtaining from them a transfer of their certificates of stock, followed by the subsequent transfer of the same to the Klinkes who were bona fide purchasers for value, without notice of Appellant's rights.

Other contentions made by counsel in their briefs do not require discussion, for it seems to us that the judgment of the trial court was demanded by undisputed facts adduced upon the trial.

Judgment affirmed.

"If the delivery of a certificate was made:

"(c) Without authority from the owner; or

"(d) After the owner's death or legal incapacity, the possession of the certificate may be reclaimed and the transfer thereof rescinded, unless:

"(1) The certificate has been transferred to a purchaser for value in good faith without notice of any facts making the transfer wrongful".