ESTATE OF JOHN F. NUTT, DECEASED, EILEEN M. NUTT AND FRANCES D. NUTT, EXECUTRICES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

EILEEN M. NUTT, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 77669, 77670. Filed August 18, 1967.

*W. Lee McLane, Jr.*, and *Thaddeus Rojek*, for the petitioners.
*James A. Thomas*, for the respondent.

SCOTT, *Judge:* Respondent determined deficiencies in petitioners'[1] income tax for the years and in the amounts as follows:

| | Deficiencies | |
| --- | --- | --- |
| Taxable year ended Dec. 31— | Docket No. 77669, John F. Nutt | Docket No. 77670, Eileen M. Nutt |
| 1955 | $20, 795. 45 | $20, 699. 45 |
| 1956 | 43, 060. 09 | 42, 604. 09 |
| 1957 | 38, 806. 03 | 38, 806. 04 |

By amendment to answer respondent claimed increased deficiencies for the year 1957 in the case of each petitioner in the amount of $8,413.85.

On October 26, 1962, the findings of fact and opinion of this Court were filed, being reported at 39 T.C. 231, and on April 18, 1963, the decision of this Court was entered.

Two issues were presented for the determination of this Court, the first being whether petitioners' sale of land with unharvested crops thereon to a corporation in which they held all of the voting stock, and assignment of leaseholds with unharvested crops thereon to another corporation in which they were the majority stockholders, should be ignored for Federal income tax purposes and the income and expenses attributable to the farming operations on those lands for the years 1955, 1956, and 1957 included in computing petitioners' taxable income. This issue was decided for petitioners.

The second issue, alternative to the first, presented for decision was whether section 1231(b)(4), I.R.C. 1954,[2] was inapplicable to the transactions so that the gains realized by petitioners from the sale of unharvested crops to each of the two corporations were taxable to petitioners as ordinary income from the sale of property held primarily

---

[1] Even though the caption of docket No. 77669 has been changed to "Estate of John F. Nutt, Deceased, Eileen M. Nutt and Frances D. Nutt, Executrices, Petitioner v. Commissioner of Internal Revenue, Respondent," because of the death on Jan. 5, 1966, of John F. Nutt, we will continue to refer to petitioners as John F. Nutt and Eileen M. Nutt for clarity in conforming this opinion with the prior opinion.

[2] All references are to the Internal Revenue Code of 1954.

for sale to customers in the ordinary course of business. This alternative issue was decided for respondent.

In our opinion, reported at 39 T.C. 231, we held that petitioners retained indirectly the right to reacquire the land sold to the corporation in which they held all the voting stock within the meaning of section 1.1231–1(f), Income Tax Regs., and that the gain on the sale of the unharvested crops was taxable to them as ordinary income. We further held that although in form petitioners assigned leaseholds to the corporation in which they were the majority stockholders, in substance they sold unharvested crops to this corporation and therefore under the provision of section 1.1231–1(f), Income Tax Regs., that "A leasehold or estate for years is not 'land' for the purpose of section 1231," the provisions of section 1231(b)(4) were inapplicable to the assignments of the leaseholds with the unharvested crops thereon. Since section 1231(b)(4) was inapplicable to petitioners' assignment of leaseholds, the gain on the sale of unharvested crops on those lands was taxable to petitioners as ordinary income.

Petitioner appealed our decision to the U.S. Court of Appeals for the Ninth Circuit. On November 22, 1965, the U.S. Court of Appeals for the Ninth Circuit remanded the case to this Court "for proceedings in accordance with the opinion of this Court."

The opinion of the Court of Appeals, filed October 1, 1965, "John F. Nutt and Eileen M. Nutt, Petitioners, v. Commissioner of Internal Revenue, Respondent," 351 F. 2d 452, 453–454, stated in part:

The taxpayers would treat a sale of a leasehold with a growing crop the same as the sale of fee land with a growing crop, giving capital gains tax treatment to the entire purchase price received by the seller.[2] The argument is well put together, but we hold that our previous decision in Bidart Bros. v. United States, 9 Cir., 262 F. 2d 607, cert. den. 359 U.S. 1003, 79 S. Ct. 1141, 3 L. Ed. 2d 1031, completely precludes petitioners here and we are unable on the leaseholds sold to Black Lands to distinguish this case as they do from Bidart.

Now we must return to Tierra Prieta, the commissioner and the Tax Court having charged the Nutts individually with the profit on the cotton crops as ordinary income. (The same was done on Black Land.) The Nutts for the years here in question filed separate tax returns, each taking half of the income as his, a rather common and permissible practice in community property states such as Arizona.

One reason given by the commissioner and the reason assigned by the Tax Court was that the taxpayers, John and Eileen, had a right to reacquire the land the crops were on directly or indirectly, and had thus run afoul of Regulation 1.1231–1(f)[3] under the Income Tax Code of 1954.

\*        \*        \*        \*        \*        \*        \*

What is really missing from the whole voluminous record, the opinion of the Tax Court, and the briefs here is how was the stock of the corporations owned and what were the incidents of such ownership. We would not accept the common-law concepts of the husband being the master of the house and of his wife's property or the notion that because Mrs. Nutt was the wife it could be presumed she

would always do what Mr. Nutt wanted done. We know the presumption that that which is acquired during coverture in a community property state is presumed to be community property and we know the exceptions.[4] But here on the sketchy record, the stock certificates of John and Eileen could have been separate property of each. Or both certificates could have been community property. And there are other combinations. If the certificate in the name of Eileen was community property, did John have a legal right to tell her how to vote it? Could he dispose of that certificate?[5] All of these may be Arizona legal niceties. It is evident that the facts are yet explorable, and we hold we are justified in asking the Tax Court to find out the facts on the stock ownership and apply its concept of the Arizona law thereto. This is of great importance on Tierra Prieta and minor on Black Land.

We do not accept petitioners' contention that Sec. 1.1231–1(f) of the Regulations is invalid as wholly made up by the commissioner without any roots in the statute. Section 1231 of the 1954 Code, a capital gains section, had its counterpart in the 1939 Code.[6] The challenged subsection of the Regulations had its equivalent before 1954.[7] We think this is one case where the Congress in 1954, if it had not liked the regulation would have changed it.

[Footnotes 2, 3, 6, and 7 omitted.]

[4] See Arizona Revised Statutes, 1956, Section 25–211.

[5] Under Section 10–231 of the Arizona Revised Statutes Eileen Nutt could have disposed of the stock registered in her name. And, John Nutt could have sold the stock registered in his name.

Further proceedings were held on November 9, 1966, at which time oral testimony was heard and documentary evidence received. At the trial on November 9, 1966, counsel for respondent renewed a motion previously filed requesting that this Court "clarify the possibly ambiguous statements contained in the opinion of the Court of Appeals relating to its remand of *Nutt v. Commissioner*, 16 AFTR 5717 (C.A. 9, 1965)." In that motion respondent requested the Court to approve his position that the Court of Appeals had affirmed the holding of this Court that the assignment by petitioners of leaseholds to Black Land, a corporation in which they were the majority stockholders, was in effect a sale of unharvested crops to Black Land, to which section 1231(b)(4) is inapplicable and therefore the gain on such sale is ordinary income. We do interpret the opinion of the Court of Appeals, as set forth in the first paragraph of the portion of that opinion that we have quoted above, to be an affirmance of this Court's holding that the gain on the sale of the unharvested crops growing on the leaseholds assigned to Black Land is ordinary income to petitioners. Therefore, any findings of fact which we set forth in the Additional Findings of Fact which we make with respect to Black Land are only such facts as we consider material with respect to the determination of the issue of whether the stock in Rancho Tierra Prieta was community or separate property of petitioners.

In our findings of fact and opinion, filed October 26, 1962, and reported at 39 T.C. 231, all of the stipulated facts were found as stipu-

lated, and some of the stipulated facts, as well as facts based upon the testimony and documentary evidence received at the trial, were set forth therein. We will not, therefore, again set forth any of those facts except certain specific portions of some of the exhibits stipulated into the record at the original trial which in our opinion bear on the issue on remand which will be included with our additional findings based upon the evidence received at the trial on November 9, 1966.

ADDITIONAL FINDINGS OF FACT

Petitioners were married on September 5, 1920, in San Angelo, Tex. In 1926 they moved to Arizona. At the time petitioners moved to Arizona, neither of them owned any property or money other than personal effects and household goods. From the time petitioners moved to Arizona in 1926 up until the time of John F. Nutt's death on January 5, 1966, they lived together in Arizona and at no time during that period did they live separate and apart. Petitioner Eileen M. Nutt still resides in Arizona.

At no time from 1920 throughout the years here in issue did either of petitioners receive any property by gift, devise, or descent. All of the property acquired by petitioners during the period from 1920 through the years here in issue was obtained with the earnings of John F. Nutt as an electrical lineman or from the income from farming produced by the joint efforts of both petitioners. At no time did petitioners execute any agreement to divide any of their community property into separate properties of husband or wife.

Under all of the deeds, except three, whereby petitioners acquired the lands, portions of which they subsequently sold to Rancho Tierra Prieta in 1955 and 1956, the lands were conveyed to John F. Nutt and Eileen M. Nutt, husband and wife.

The deed covering approximately 80 acres of property in the southeast quarter of the northwest quarter of section 30, township 8 south range 8 east, Pinal County, Ariz., executed on the 26th day of December 1935, conveyed the land to "John F. Nutt and Ileen Nutt, his wife, as joint tenants with right of survivorship."

Another deed, executed on January 8, 1945, conveyed all of section 8 and the north half of section 20, except the south 165 feet of the northeast quarter, township 8, south of range 8 east, Pinal County, Ariz., with certain exceptions for railroad and road right-of-ways, to "John F. Nutt and Eileen M. Nutt, not as tenants in common and not as a community property estate, but as joint tenants with right of survivorship."

A deed executed on the 22d day of December 1947, conveyed the southwest quarter of section 29 and the southeast quarter and the east half of the southwest quarter of section 30, township 8 south, range 8

east, in Pinal County, Ariz., to "John F. Nutt and Eileen M. Nutt, husband and wife not as tenants in common and not as a community property estate, but as joint tenants with right of survivorship."

The major portions of section 8 and of the north half of section 20, and of sections 29 and 30 acquired by petitioners under these deeds, were sold by them to Rancho Tierra Prieta in 1955 and 1956. Some portions of those lands were not sold by petitioners during any of the years here in issue, but were retained by them.

Petitioners during the years 1953 through 1955 maintained three bank accounts, one designated as "farming account," one as "Rancho Tierra Prieta," and one as "commercial account."

The farming account was used primarily to pay expenses on a lease known as the Wagner lease, consisting of section 24 and approximately 63 acres in the northwest corner of section 30 of township 8 south, Pinal County, Ariz.

The Rancho Tierra Prieta account was used in an operation carried on prior to the incorporation of the corporation Ranch Tierra Prieta and was closed out on August 29, 1955, and the funds were placed on petitioners' commercial account. Most of the funds in the farming account and the Rancho Tierra Prieta account were transfers from the commercial account.

Deposits in the commecrial account consisted primarily of receipts from sale of farm produce, loans received with respect to operating the farm, and receipts from sale of property. No distinction as to what section or piece of land the crop was raised on was made in the records maintained with respect to deposits of receipts from sales of farm produce in the commercial account. The commercial account was a joint account of petitioners and either could draw checks against it and checks were drawn against this account for personal as well as business expenses of petitioners. Petitioner John F. Nutt determined what funds were to be placed in the commercial account, but checks were drawn on that account by both petitioners.

On August 26, 1955, a check to the order of Rancho Tierra Prieta in the amount of $7,500 was drawn on the commercial account by John F. Nutt in payment for 75 shares of the common stock of that corporation issued to him by certificate No. 1 of the corporation, and on August 26, 1955, a check payable to Rancho Tierra Prieta in the amount of $7,500 was drawn on the commercial account, signed "Mrs. John F. Nutt," which check was issued in payment for 75 shares of stock of that corporation evidenced by certificate No. 2, issued to Eileen M. Nutt. Both of these certificates were signed by John F. Nutt, president, and Eileen M. Nutt, secretary, which was in accordance with the bylaws of Rancho Tierra Prieta requiring such certificates to be signed by the president or vice president and the secretary.

On August 29, 1955, a check in the amount of $4,000 payable to the order of Black Land Farms, Inc., was drawn on the commercial account by John F. Nutt in payment for 40 shares of stock of that corporation evidenced by certificate No. 1 issued to John F. Nutt, and on August 29, 1955, a check on the commercial account payable to the order of Black Land Farms, Inc., in the amount of $3,900 was drawn by Eileen M. Nutt in payment for 39 shares of stock of that corporation evidenced by certificate No. 2 issued to Eileen M. Nutt. These stock certificates were signed by John F. Nutt, president, and Eileen M. Nutt, secretary, which was in accordance with the provisions of the bylaws of Black Land Farms, Inc., that stock certificates be signed by the president and the secretary.

At a special meeting of the board of directors of Black Land Farms, Inc., held on August 21, 1957, a motion was unanimously carried that a dividend of $10 per share be paid to all the shareholders of record of the common stock outstanding as of August 31, 1957.

On the Federal income tax return for the calendar year 1957 filed by John F. Nutt and on the Federal income tax return for the calendar year 1957 filed by Eileen M. Nutt, dividends in the amount of $1,895.54 are reported as community property attributable 50 percent to the wife and 50 percent to the husband. The dividends so reported were itemized as follows:

| | |
|---|---:|
| United Funds Inc.–United Accumulated Fund | $1,076.24 |
| Massachusetts Investors Trust | 129.30 |
| Black Land Farms, Inc. (an Arizona corp.) | 790.00 |
| | 1,995.54 |
| Dividend exclusion | (100.00) |
| | 1,895.54 |

This was in conformity with the reporting by petitioners during the years 1955, 1956, and 1957 of all their income, including the capital gains reported on the sale of the lands, leaseholds and growing crops thereon, to Rancho Tierra Prieta and Black Land Farms, Inc., as community income, one-half of which was the income of each.

On March 4, 1966, Eileen M. Nutt filed in the Superior Court of the State of Arizona, In the Matter of the Estate of John F. Nutt, deceased, a document which was sworn to in open court before a deputy clerk of the court entitled, "Testimony of Applicant on Probate of Will," in which among other things she stated, "All of the estate of said deceased is community property, the same having been acquired since his marriage with Eileen M. Nutt."

On October 18, 1965, petitioner Eileen M. Nutt executed a last will and testament in which, among other things, she stated, "I declare that all of the property which I now own is community property."

Included in the property which Eileen M. Nutt owned when this will was executed were the 75 shares of stock she owned in Rancho Tierra Prieta and the 39 shares of stock she owned in Black Land Farms, Inc. In referring in the affidavit to all of the Estate of John F. Nutt being community property, Eileen M. Nutt was including in the property referred to the 40 shares of stock in Black Land Farms, Inc., and the 75 shares of stock in Rancho Tierra Prieta which were issued in the name of John F. Nutt when the corporations were formed.

There has been no change in ownership of the issued shares of common stock in Black Land Farms, Inc., and Rancho Tierra Prieta on the books and records of those corporations since the original issuance.

In December 1960 Eileen M. Nutt received a dividend from Black Land Farms, Inc., and she asked her husband if she could have it and he told her yes. She kept the amount of that dividend for her personal use and did not deposit it in the joint checking account of herself and her husband.

The certificate of incorporation of Rancho Tierra Prieta provides that all issued shares of common stock shall have equal voting rights and the bylaws of that corporation provide that "Only persons in whose name shares entitled to vote stand in the stock records of the company on the day three days prior to the meeting of stockholders * * * shall be entitled to vote at such meeting."

The bylaws of Black Land Farms, Inc., provide that "each stockholder shall be entitled to one vote for each share of stock standing in his own name on the books of the company whether represented in person or by proxy."

#### ULTIMATE FACT

The stock in Rancho Tierra Prieta and the stock in Black Land Farms, Inc., issued in the name of John F. Nutt and the stock in these two corporations issued in the name of Eileen M. Nutt was at all times from the date of its issue until the date of the death of John F. Nutt community property of John F. Nutt and Eileen M. Nutt.

#### OPINION

When petitioners moved to Arizona in 1926 they had no money or property other than personal effects and household goods and all property which they acquired thereafter was acquired with John F. Nutt's earnings as an electrical lineman or amounts earned through petitioners' joint efforts in farming.

On their income tax returns for the years here in issue, all their income was reported as community income. The stock dividend declared by Black Land Farms, Inc., in 1957 was reported as community income. In this corporation 39 shares of stock were issued in the name of Eileen

M. Nutt and 40 shares in the name of John F. Nutt, so there would have been a difference in amount had the dividends been reported by each with respect to the stock issued in his or her name. Likewise, if the lands deeded to petitioners as joint tenants with right of survivorship were not considered by petitioners to be community property, no such indication was given on their income tax returns. The fact that title is taken by a husband and wife as joint tenants with right of survivorship is not conclusive in Arizona that the property is not community property. *In Re Baldwin's Estate*, 71 P. 2d 791 (Ariz. 1937). The fact that income is reported on a Federal income tax return as community income is evidence that the property is community property, which evidence is to be weighed by the trial court along with other evidence, *Porter* v. *Porter*, 67 Ariz. 273, 195 P. 2d 132 (1948). However, the question here does not concern whether the lands transferred to the corporation were community property but whether the stock of the corporation issued to each petitioner was community property.

The stock in both Black Land Farms, Inc., and Rancho Tierra Prieta acquired by each petitioner was paid for with funds from the account in which was deposited the receipts from the sale of farm products and the loans received with respect to the farming operation. All the income from the sale of farm products was reported by petitioners on their income tax returns as community income. The funds in the account on which the checks in payment for this stock were drawn were treated by petitioners as community property.

The record shows that petitioners had made no agreement between themselves with respect to any of their property being other than community property. Eileen M. Nutt specifically testified that they had executed no such agreement and the import of her testimony is that they had made no such oral agreement in respect to their property. This testimony is further supported by the statements made by Eileen M. Nutt in her last will and testament written in 1965 when the stock in both Black Land Farms, Inc., and Rancho Tierra Prieta was still owned by her that all her property was community property and the statement she made in her testimony in connection with the probate of her husband's estate that all property he owned at the time of his death, at which time he owned the stock originally issued to him in Black Land Farms, Inc., and Rancho Tierra Prieta, was community property.

The facts in this record are such as to affirmatively show that the stock issued to Eileen M. Nutt as well as that issued to John F. Nutt in both Rancho Tierra Prieta and Black Land Farms, Inc., was community property. However, the fact that the stock in these companies was acquired while petitioners were married and living together in Arizona would be sufficient to create a presumption that the stock was community property. Section 25-211 (A), Ariz. Rev. Stat. Ann. (1956),

provides that all property acquired by either husband or wife during the marriage except that which is acquired by gift, devise, or descent, or earned by the wife and her minor children while she lives separate and apart from her husband, is the community property of the husband and wife. This statute has been interpreted to mean that any property acquired during coverture, whether taken in the name of the husband or the wife, is prima facie community property. *Lovin* v. *Woodward*, 40 P. 2d 102, 104 (Ariz. 1935), and *In Re Torrey's Estate*, 54 Ariz. 369, 95 P. 2d 990 (1939). See also *Mortensen* v. *Knight*, 81 Ariz. 325, 305 P. 2d 463 (1956). The character of property as to whether it is separate or community is fixed at the time the property is acquired and such character of the property remains unchanged unless altered by agreement of the parties or by operation of law. *Kingsbery* v. *Kingsbery*, 93 Ariz. 217, 379 P. 2d 893, 898 (1963).

Petitioners argue that the stock here was not community property since "the well-established law * * * holds that such a statutory presumption is rebutted by the taking of record title by a husband and wife in a form other than community property," citing *Edwin M. Petersen*, 35 T.C. 962, 967 (1961). The *Petersen* case involved the California law and a question with respect to real property taken by a husband and wife as joint tenants. There are differences in the California and Arizona community property laws. See *Cosper* v. *Valley Bank*, 237 Pac. 175, 176 (Ariz. 1925). The instant case involves title to stock in the separate names of the husband and wife. The Arizona Statute provides that all property acquired by either husband or wife, with exceptions not here pertinent, is community property of the husband and wife, and this statute has been interpreted to include property taken in the name of either the husband or the wife. *In Re Torrey's Estate*, *supra*. If the fact that property was in the wife's name rebutted the statutory presumption, the statute would be meaningless. As heretofore pointed out, even the taking of title to real property by husband and wife as joint tenants is not, standing alone, sufficient to rebut the presumption under Arizona law that property acquired during coverture is community property. *In Re Baldwin's Estate*, *supra*.

The other case cited by petitioners in support of their position that the stock was not community property is *Martha Locke Shoenhair*, 45 B.T.A. 576 (1941). This case involved an oral agreement between a husband and wife that the husband's earnings from his law partnership and his income from investments were to be his sole and separate property entirely free from any community interest or claim of his wife, and an agreement that the wife's income derived from the trusts of which she was a beneficiary, from any real estate she owned, and from any investments she might make was to be her sole and separate property entirely free from any community interest or claim of her

husband. This oral agreement had been strictly adhered to and carried out by the husband and wife each maintaining a separate bank account and neither exercising any right, dominion, or control over the income, bank account, or financial affairs of the other. In the *Shoenhair* case, the issue was whether this agreement was valid under Arizona law, and we held that it was valid under Arizona law since the Supreme Court of that State had consistently held that a husband or wife can convey to the other his or her interest in the community property provided the agreement of both spouses to such a conveyance is clearly shown. In so holding we quoted from *In Re Baldwin's Estate*, 71 P. 2d 791, 795 (1937).

In the instant case it has been affirmatively shown not only that the stock was bought with community funds and the parties had no agreement that any property acquired by them was other than community property, but that they considered the stock in Black Land Farms, Inc., and Rancho Tierra Prieta to be community property. In fact all the affirmative evidence is to the effect that the stock was community property. Petitioners argue that the statements of the parties respecting the property are not determinative of the character of the property. In *Greenwood* v. *Commissioner*, 134 F. 2d 915 (C.A. 9, 1943), affirming 46 B.T.A. 832 (1942), the court held such statements of the husband that his wife was owner of one-half of the property or reference to the property as community property insufficient to prove that property acquired as the separate property of the husband and when brought to Arizona placed in a safe-deposit box or bank accounts in the name of husband and wife as joint tenants with right of survivorship had been transmuted into community property. However, the court did discuss the evidence of the statements and called particular attention to the only statement shown to have been made by the husband and wife in the presence of each other referring to "Half of all we own" belonging to each of them, a statement as consistent with a joint tenancy as with community property. In the instant case the statements of petitioners as well as the reporting of the dividend received from Black Land Farms, Inc., in 1957 is consistent only with the stock in Rancho Tierra Prieta and Black Land Farms, Inc., being community property.

Petitioners cite *Jones* v. *Rigdon*, 32 Ariz. 291, 257 Pac. 639, 640 (1927), for the proposition that "Contemporaneous conduct by the husband indicating his intention that his wife should have the property, coupled with the fact that the conveyance is to the wife, is generally held conclusive that the property was intended to be her separate estate." That case involved a question of whether real property the deed to which was in the name of the wife only was her separate property. The court concluded that the evidence in that case which showed that the downpayment was made by funds in her personal

possession and the mortgage and note was signed only by her, as well as other facts there shown, were sufficient to establish that the property was the separate property of the wife. In the instant case the "contemporaneous actions" of the parties were the treating of the stock in Black Land Farms, Inc., as community property when they reported the dividends on that stock as community property. There is no indication that the parties intended the stock in Rancho Tierra Prieta to be other than community property at any time. This stock was paid for by community funds. One-half of the voting stock was taken in the name of each petitioner. The expression of their view toward this property at a later date while the stock was still owned by them was that it was community property. If, under the facts of this case, we were to conclude that 75 shares of the stock of Rancho Tierra Prieta were the separate property of John F. Nutt and 75 shares of such stock were the separate property of Eileen M. Nutt, we would in effect be holding that property acquired with community funds of a married couple and considered by them to be community property is not community property if taken in their individual names and not their joint names. Such a conclusion is directly contrary to the Arizona Statutes as interpreted by the Arizona courts.

Having concluded that the stock owned by each of petitioners in Rancho Tierra Prieta was community property, we come to the second question which we are required to consider under the opinion of the Court of Appeals remanding the case to us, which is whether the stock registered in the name of Eileen M. Nutt could be managed and controlled by John F. Nutt, her husband. Neither party has directed our attention to any case specifically involving the rights of the husband with respect to voting or disposing of corporate stock held as community property. Any number of Arizona cases recite that management and control of community property during coverture is vested in the husband and that the only limitations on his management of such property are that he may not encumber or sell the real property without the consent of the wife and that he must exercise his management and control of the property for the benefit of the community and not in fraud upon the interests of the wife. *Greer* v. *Goesling*, 97 P. 2d 218, 220 (Ariz. 1939), and *La Tourette* v. *La Tourette*, 15 Ariz. 20, 137 Pac. 426 (1914).

Many of the Arizona cases involving the management of community property deal with whether an indebtedness contracted by the husband is enforceable against the community property. These cases turn on whether the debt was contracted by the husband as a community debt for the benefit of the community. *Donato* v. *Fishburn*, 90 Ariz. 210, 367 P. 2d 245 (1961). This case involved whether a note signed by the husband for the benefit of a corporation in which the husband and wife owned as community property 60 percent of the

stock was a debt contracted by the husband for the benefit of the community so as to subject the community property to seizure for enforcement of payment of the note.

Most of the other Arizona cases involving the determination of rights of the husband as manager of the community property involve either the division of the community property upon divorce or claims by heirs of the husband or wife when the community has been terminated by the death of either the husband or wife. See *Spector* v. *Spector*, 94 Ariz. 175, 382 P. 2d 659, 662 (1963), where the court allowed division of community property upon divorce by the husband's paying the wife cash to the extent of the value of one-half of the community property where "all of the property including stock in a closely held corporation * * * is community property," and *In Re Baldwin's Estate, supra.*

Petitioners' brief on this issue deals almost exclusively with the holdings of numerous cases of the Arizona Supreme Court, as well as with the case of *Goodell* v. *Koch*, 282 U.S. 118 (1930), that under Arizona law, the wife's interest in community property and community income is the equal of the husband's, that it gives the husband no higher or better title than it does the wife but recognizes a marital community under which both are equal. In *Arizona Publishing Co.*, 9 T.C. 85 (1947), we held that under Arizona law the wife is the present owner of one-half the stock in a corporation held by her and her husband as community property even though the stock is issued to and registered in the husband's name. It would serve no useful purpose to discuss the cases cited by petitioners in detail since they deal with the ownership rights of the wife in the property and not her right to manage and control the property during her marriage to her husband while the two of them are living together.

In the instant case we are concerned with the management rights of the husband for the benefit of the community and whether he can vote or dispose of stock registered in his wife's name. If John F. Nutt could vote all the stock of Rancho Tierra Prieta, he could vote that stock to dissolve the corporation and declare the land petitioners had sold to it as a dividend. If he could sell the stock in Eileen M. Nutt's name, he could sell it to the corporation. He would then have registered in his name all the outstanding voting stock of the corporation and as registered owner of all voting stock dissolve the corporation, declare a dividend of the land or sell the land to himself as community property. It is therefore apparent that if John F. Nutt could either vote or dispose of the stock registered in Eileen M. Nutt's name, he had an indirect right to reacquire the property petitioners sold to the corporation. He could do this for the benefit of the community and without any fraud upon the wife.

Section 10–361, Ariz. Rev. Stat. Ann. (1956), provides that a corporation may be dissolved at either an annual or special shareholders' meeting by a two-thirds vote of the outstanding shares of stock, or by the written unanimous consent of all shareholders, and section 10–152 Ariz. Rev. Stat. Ann. (1956), provides that corporations may acquire and transfer property possessing the same power in such respects as private individuals enjoy. Section 10–271, Ariz. Rev. Stat. Ann. (1956), provides for cumulative voting at all elections for directors or trustees of a corporation and that "each shareholder may cast as many votes in the aggregate as he is entitled to vote under its charter, multiplied by the number of directors or trustees to be elected." Section 10–301, Ariz. Rev. Stat. Ann. (1956), provides for deposit of shares with a trustee of a voting trust. Section 10–233 provides that nothing in the article dealing with transfer of certificates and shares shall be construed as forbidding a corporation to recognize the exclusive right of a person registered on its books as the owner of shares to receive dividends and to vote as such owner. Under this provision a number of cases have dealt with the rights of various parties with respect to the stock. One of these cases, *Niesz* v. *Gorsuch*, 295 F. 2d 909 (C.A. 9, 1961), held that the record owner of stock at the time of voting on whether to merge the corporation with another had prima facie title thereto and the right to vote it, and *Provident Security Life Insurance Co.* v. *Gorsuch*, 323 F. 2d 839, 843, 844 (C.A. 9, 1963), held that a corporation was justified in recognizing the right of holders of shares endorsed in blank to vote such shares. However, the protection afforded to a corporation by the provisions of a law similar to section 10–233, Ariz. Rev. Stat. Ann. (1956), has been held not to exist where the corporation has notice of conflicting claims, *In Re Alling's Estate*, 186 Misc. 192, 63 N.Y. S. 2d 427, 431–432 (Surr. Ct. 1945), or where a transferee of stock from the registered owner has given notice of the transfer to the corporation and presented the stock with the demand for issuance of a new certificate to him. *Turnbull* v. *Longacre Bank*, 249 N.Y. 159, 163 N.E. 135, 138 (1928). See also *Winans* v. *Alpha Beta Food Market, Inc.*, 11 Cal. App. 2d 653, 54 P. 2d 48 (1936). Under the holdings of these cases, the corporation Rancho Tierra Prieta would be entitled to recognize the right of Eileen M. Nutt to vote the stock because it was registered in her name only if that corporation had no notice of conflicting claims to such vote. Since the officers and directors of the company were petitioners, the corporation had notice that the stock registered in the name of Eileen M. Nutt was community property and that under Arizona law the husband had the sole right to manage and dispose of such personal property.

The Court of Appeals in its opinion remanding this case stated, "We would not accept the common-law concepts of the husband being the master of the house and of his wife's property or that because Mrs.

Nutt was the wife it could be presumed she would always do what Mr. Nutt wanted done." We do not interpret this as meaning that the Court of Appeals would not accept the well-established proposition that in Arizona the husband has the general management of the community property whether standing in his name or that of his wife, *City of Phoenix* v. *State*, 60 Ariz. 369, 137 P. 2d 783 (1943), and that the husband is head of the family and its agent in control and management of the community property. *Fee* v. *Arizona State Tax Commission*, 55 Ariz. 67, 98 P. 2d 467, 468 (1940), and cases there cited.

The Court of Appeals specifically directed that this Court "find out the facts on the stock ownership and apply its concept of the Arizona law thereto." Having found the facts to be that the stock owned by each John F. Nutt and Eileen M. Nutt in both Black Land Farms, Inc., and Rancho Tierra Prieta was community property, we conclude that John F. Nutt as manager of the personal property of the community had the legal right to vote the stock and we further conclude that since the laws of Arizona dealing with voting of stock permit voting trusts, they would likewise permit voting by a person legally given the right to manage and control the stock and that the corporation had notice of the claim of John F. Nutt to the right to vote all the corporate stock of Rancho Tierra Prieta since both he and Eileen M. Nutt, the officers of the corporation and two of the three directors of the corporation, knew that all the voting stock of Rancho Tierra Prieta was community property of petitioners. The fact that Eileen M. Nutt did actually vote the stock registered in her name at the stockholders meeting of the corporation is immaterial. Her husband was also at the meetings and knew that she was voting the stock. Under Arizona law a wife may act as agent for her husband or agent of the community with her husband's consent. *Munger* v. *Boardman*, 53 Ariz. 271, 88 P. 2d 536 (1939). We conclude that under the law of Arizona since John F. Nutt had the right to manage and control the community property during coverture, he had the right to vote the stock of Rancho Tierra Prieta issued in his own name and that issued in the name of his wife, Eileen M. Nutt. Having control of all the voting stock of this corporation, John F. Nutt had complete dominion over the corporation, so that he would be able to reacquire the property sold to Rancho Tierra Prieta for the benefit of the community and reacquisition could be made in a manner which would not be fraud upon his wife.

In view of our conclusion as to the right of John F. Nutt to vote all the stock of Rancho Tierra Prieta, it is immaterial whether he could transfer or sell that portion of the stock issued to and registered in the name of Eileen M. Nutt since he would be able to reacquire the land sold to Rancho Tierra Prieta without selling the corporate stock. However, since in our opinion, he did have the right to sell or transfer this stock, we will discuss briefly our basis for this conclusion.

Section 10–231, Ariz. Rev. Stat. Ann. (1956), provides the method of transfer of certificates for shares of stock. This provision is a part of the Uniform Stock Transfer Act which was adopted as a part of article 7 of the General Corporation Law of Arizona. It is this section to which the Court of Appeals referred in a footnote which we have quoted heretofore. This section provides that title to a certificate and to the shares represented thereby can be transferred only by delivery of the certificate endorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or by delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the certificate or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby.

Petitioners take the position that because of the provisions of this section John F. Nutt could not transfer the shares of stock issued in the name of Eileen M. Nutt without her consent even if the shares were community property. It is their position that the provisions of section 10–231, Ariz. Rev. Stat. Ann. (1956), with respect to transfer of stock are in conflict with the provision of section 25–211(B), Ariz. Rev. Stat. Ann. (1956), which provides that during coverture personal community property may be disposed of by the husband only.

Petitioners do not take the position that if the shares are community property they could be legally disposed of by Eileen M. Nutt only, but nevertheless we will comment on the statutory provisions which in our opinion show that she could not legally dispose of the shares registered in her name which were community property without her husband's consent as well as our view that the husband has the right to dispose of stock which is community property without the wife's consent.

Section 10–241, Ariz. Rev. Stat. Ann. (1956), provides that a person who for value transfers a stock certificate unless a contrary intention appears, warrants, among other things, that he has a legal right to transfer it. Since the community personal property in Arizona can be transferred by the husband only, Eileen M. Nutt would be unable to give this warranty unless her husband consented to her action in connection with the transfer of the certificate and permitted her to act as agent for the community to transfer it.

The provision of the Uniform Stock Transfer Act as incorporated into section 10–231, Ariz. Rev. Stat. Ann. (1956), is for the protection of a transferee who purchases the stock in good faith and without notice of any fraud or irregularity in the endorsement. *McCullen* v. *Hereford State Bank*, 214 F. 2d 185 (C.A. 5, 1954) ; *Chatz* v. *Midco Oil Corp.*, 152 F. 2d 153 (C.A. 7, 1945), certiorari denied 329 U.S. 717. However, even if we assume that a purchaser of the stock with the

certificate endorsed by Eileen M. Nutt upon her representation that she was not a married woman or that the stock was her separate property or that she was authorized to act as agent for the marital community to sell the stock, would be protected under section 10–231, the fact would nevertheless remain that such a transfer of the stock on the part of Eileen M. Nutt would be upon a false warranty if in fact her husband had not authorized her to act as agent for the marital community. It cannot be assumed that Eileen M. Nutt would give a false or fraudulent warranty to dispose of her stock in Rancho Tierra Prieta, even if the unlikely assumption could be made that in such a closely held corporation any person would in good faith purchase the stock issued in the name of Eileen M. Nutt without complete investigation as to her right to sell it.

Where a statute such as the Uniform Stock Transfer Act has been enacted subsequent to the enactment of another statute, the newly enacted statute should not be considered as repealing the other statute except where the two are so inconsistent that reconciliation is impossible. *Hodson* v. *Hodson Corp.*, 32 Del. Ch. 87, 80 A. 2d 180, 182 (1951). In the *Hodson* case, the court held that the Uniform Stock Transfer Act did not repeal the provisions of the Delaware law with respect to the situs of shares of stock of a Delaware corporation being within the State of Delaware. In arriving at this conclusion, the court cited and discussed several cases of Federal courts holding that the Uniform Stock Transfer Act did not repeal or modify acts of various States with respect to situs of stock. The court in its opinion pointed out that the intent underlying the Uniform Stock Transfer Act is to afford protection to purchasers of stock certificates by making the certificates as fully negotiable as possible.

Section 10–239, Ariz. Rev. Stat. Ann. (1956), provides that the delivery of a certificate with intent to transfer it by a person appearing by the certificate to be the owner thereof without the endorsement requisite for a transfer of the certificate and shares shall impose an obligation upon the person delivering the certificate to complete the transfer and that such obligation may be specifically enforced. It has been held that "specifically enforced" means that if the holder of the stock should refuse to endorse it a judgment of the court would have the same effect. *Thomas* v. *Southdown Sugars*, 95 So. 2d 721, 724 (La. Ct. App. 1957). Enforcement of the obligation to endorse has been made under circumstances where unendorsed certificates were delivered to a lender as security for a note. *Dunscombe* v. *Crocker-Wheeler Electric Mfg. Co.*, 232 App. Div. 137, 249 N.Y. Supp. 223 (1931), and where certificates were delivered but not endorsed pending payment for the stock. *Taylor* v. *Daynes*, 218 P. 2d 1069 (Utah 1950). However, when a wife delivered stock to her husband without endorsement in order that he might secure a debt to a bank, there did not exist an obligation

of the wife to endorse which could be specifically enforced where the State statute forebade a wife to bind herself for her husband's debts. *Coats* v. *Guaranty Bank & Trust Co.*, 170 La. 871, 129 So. 513 (1930). In that case the court specifically pointed out that the stock was the separate property of the wife and under the law of Louisiana at the time of the transaction a wife was expressly prohibited from binding herself for debts of her husband or from mortgaging or pledging her property to secure his debts. The court stated at page 515:

> It might be that under the provisions of section 9 of the Uniform Stock Transfer Law * * * such a delivery created an obligation to endorse the stock certificate, which could have been specifically enforced by one of the parties in interest, * * * were it not for the fact that the delivery was made, and in fact each of the transfers was completed * * * during a period when the wife was expressly prohibited by law from binding herself for the debts of her husband or mortgaging or pledging her separate property to secure the same. * * *

Although none of these cases deals with a refusal of a wife to endorse stock which is community property registered in her name which may be disposed of by her husband only, the import of the cases dealing with stock delivered unendorsed is such that the sections of the Arizona Statutes dealing with the power of the husband to dispose of personal community property and those dealing with the transfer of stock would be read in conjunction with each other so that if the husband made a sale of stock which was community property registered in his wife's name, a court would specifically enforce the sale and require endorsement of the certificate. While the record here does not show whether physical possession of the certificates was with the husband or the wife, if endorsement would be required, it would appear that delivery would also be required if necessary. We, therefore, conclude, as respondent contends, that there is no conflict between the Uniform Stock Transfer Act and the provisions of Arizona law with respect to the husband's right to dispose of the community property.

In *Warren* v. *Warren*, 2 Ariz. App. 206, 407 P. 2d 395 (1965), the Supreme Court of Arizona affirmed the action of a lower court in awarding to the wife in a divorce action the value of the husband's stock interest in a stock purchase plan of his employer at the time of the divorce, it appearing to the court that the stock plan was community property, regardless of the fact that the plan was in the husband's name. The court placed a lien on the stock plan for security for the payment and the payment of alimony. Also, in the case of *Spector* v. *Spector*, *supra*, the court imposed a lien on stock which had been community property but was awarded upon divorce to the husband as his separate property to secure payment to the wife of the value of her half of the community property which was awarded to the husband (382 P. 2d 659, 666). Certainly if there was no way a court could enforce delivery and endorsement of stock certificates, imposing a lien on a stock

plan or stock under the circumstances present in *Warren* v. *Warren*, *supra*, and *Spector* v. *Spector*, *supra*, would be a futile act. The conclusion to be drawn from these cases is that section 10–231, Ariz. Rev. Stat. Ann. (1956), does not prohibit a court in Arizona where necessary and proper from requiring transfer of stock, including delivery and endorsement of the certificate.

In view of our conclusion, it is unnecessary to vacate our decision entered April 18, 1963.